1

DAWN M. SMITH, Bar No. 222481
dawn@smithclinesmith.com
SMITH CLINESMITH, LLP
325 N. St. Paul,
Republic Tower, 29th Floor
Dallas, TX 75201
Telephone:  (214) 953-1900
Facsimile:  (214) 953-1901

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **SNAPKEYS, LTD.** | **Case No. 5:19-cv-2658** |
| **Plaintiff,** | **COMPLAINT FOR:** |
| | **1)    BREACH OF NON-DISCLOSURE AGREEMENT** |
| | **2)    FRAUD** |
| **VS.** | **3)    MISSAPROPRIATION OF TRADE SECRETS** |
| | **4)    CONVERSION** |
| | **5)    UNFAIR COMPETITION** |
| **GOOGLE, LLC.** | **6)    BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
| **Defendant.** | **DEMAND FOR JURY TRIAL** |

COMES NOW, Snapkeys Ltd. ("Snapkeys"), and files this, Plaintiff's Original Complaint. complaining of and about Defendant Google LLC. ("Google") and for causes of action would respectfully show unto the Court the following:

COMPLAINT                                                      1

**PARTIES**

1.      Plaintiff Snapkeys Ltd. ("Snapkeys") is a foreign limited liability company registered under the laws of the State of Israel, with its principal place of business in the State of Israel.

2.      Upon information and belief, Defendant Google, LLC. ("Google") is a corporation organized under the laws of the State of Delaware with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google does business in the Northern District of California.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction over the causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1331 and principles of supplemental jurisdiction. Federal question jurisdiction exists by reason of the claims alleged below, arising under the Defend Trade Secrets Act of 2016, codified at 18 U.S.C. § 1836. Original jurisdiction is granted to the federal courts by 18 U.S.C. 1836(c). This Court has supplemental jurisdiction over the state law claims alleged in this action, pursuant to 28 U.S.C. § 1367(a), because these claims are so intimately related to claims in the action exclusively within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution, and because these claims arise out of the same nexus of facts and events. In addition, this Court has proper jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2), because this suit is between a citizen of a domestic state (Google), and a citizen of a foreign state (Snapkeys) and the amount in controversy exceeds $75,000.

4.      Venue is proper in the Northern District of California under 28 U.S.C. § 1391(c)(2) because the Google resides in the Northern District, maintains its principal place of business in the Northern District, and the Northern District is where a substantial part of the events or omissions

giving rise to the claim occurred, and is therefore subject to personal jurisdiction in this District. Venue is proper in this Division pursuant to Local Rule 3-2(e) because this action arises in the county of Santa Clara, where Google maintains its principal place of business. Furthermore, Venue exclusive to Santa Clara County, California as dictated within the parties' Non-Disclosure Agreement, an agreement which forms the basis of many of the claims and causes of action alleged in this lawsuit.

5.     This Court has personal jurisdiction over Google pursuant to Fed. R. Civ. P. 4(h), Fed. R. Civ. P. 4(k)(1), and under Sections 410.10 and 416.10 of the California Code of Civil Procedure. Google has conducted and does conduct business within the State of California and within this judicial district. Furthermore, Google, directly or through intermediaries, makes, distributes, offers for sale or license, sells, and advertises its products and services in the United States, the State of California, and the Northern District of California, and maintains its principal place of business in California.

## BACKGROUND

6.     Snapkeys is a software development company that specializes in creating smartphone and smartwatch keyboard technology designed to enhance the way people interact with their mobile devices.

7.     On February 18, 2014 and February 26, 2015, Snapkeys submitted patent applications for its new "iType" keyboard technology, designed to create a user-friendly and efficient keyboard to be implemented on Smartphone and Smartwatch devices. Those patent applications remain pending.

8.     On or around July 1, 2015, a representative of Google asked a mutual contact of Snapkeys to have Snapkeys reach out to them. After an initial call, the representative from Google put Snapkeys in touch with a representative of Google's Android Wear Department which

implements Google's Android Operating System on smartwatch devices, to discuss the promotion of Snapkeys' brand new "iType" technology on Google's Android Wear smartwatches.

9.     In response to these discussions, on July 8, 2015, Google sent the representatives of Snapkeys a Developer Non-Disclosure Agreement, which was properly executed by Snapkeys and sent back to Google on or around July 29, 2015.[1]

10.     Over the course of the next year and a half, representatives of Google made ongoing fraudulent and misleading promises and representations regarding Google's business relationship with Snapkeys, and Google's planned use and promotion of Snapkeys' iType technology. Specifically, Google representatives informed representatives of Snapkeys that Google would promote Snapkeys's technology for Google's Android Wear product line in the Google Play Store, providing false or misleading "timelines" for the project's implementation, and promising to provide Plaintiff with an Early Access Program Agreement (EAP).

11.     Specifically, the following is a list of some (but not all) of the false, fraudulent, and/or misleading representations and promises which were made by Google's representative, Clem Wright, to representatives of Snapkeys from July of 2015 until September of 2016:

- Google would promote Snapkeys and its iType technology as a Google partner through various advertising and social media outlets;

- Google would introduce Snapkeys to Original Equipment Manufacturers (OEMs) and ask that they preload the Snapkeys technology on Google devices;

- That Snapkeys' keyboard technology was far more advanced than the keyboard technology Google had been previously developing, and were "amazed" with what Snapkeys's technology could do;

- That Snapkeys was the furthest along by far amongst all the other keyboard technology companies Google was speaking with;

---

[1] Exh. 1, Google's Acknowledgement of Snapkeys's executed NDA.

COMPLAINT                          4

- That Google would send Snapkeys an Early Access Program agreement (EAP) giving Google the right to share an early version of their software for Android Wear 2.0 devices with Snapkeys;

- That Google would send Snapkeys the Application Programming Interface (API) for Google's Android Wear 2.0, as well as an Android Wear 2.0 smartwatch to allow Snapkeys to integrate their technology within the new product;

- That Google would push Snapkeys' iType keyboard in the Google Play store, and that Snapkeys would be able to monetize the technology by selling licenses to end users for a fee;

- That Snapkeys' keyboard would be included and promoted in a collection of "Keyboard for Wear" apps on the Google Play Store, yet to this day Plaintiff is not aware of any such collection actually existing; and

- That Google would release an update for Android Wear 2.0 in the Fall of 2015, and before the release of the Android Wear 2.0 update, Google would provide Snapkeys with the Early Access Program, an Application Programming Interface for Android Wear 2.0, and a smartwatch with the necessary support to implement Snapkeys' iType technology so that iType would be ready for the release date of Android Wear 2.0.

12.     Upon mutual agreement between Snapkeys and Google, Snapkeys sent Google an original working prototype of Snapkeys' iType keyboard technology for Android.

13.     On November 11, 2015, representatives of Snapkeys and Google met in-person in California to discuss their on-going business relationship. During this meeting, Google representatives disclosed to Snapkeys, for the first time, that Google was creating their own smartwatch keyboard, but assured Snapkeys that the Snapkeys keyboard was by far more advanced than that of other companies, including Google itself, and stated that Google would not make its keyboard the default keyboard on the Android Wear smartwatches, but instead would allow the user to decide which keyboard it wanted to download and use on their smartwatch. Google also explained that this option for users would be how Snapkeys monetized its keyboard, as Google would promote Snapkeys's keyboard on the Google Play Store as promised, and users could implement the Snapkeys keyboard on their Smartwatch devices. Based on these representations, and at Google's request, Snapkeys ported its technology into the existing Android Wear 1.0, and

COMPLAINT                                   5

provided Google representatives at the meeting with an additional smartwatch prototype with its iType technology running on Android Wear 1.0, which Google retained in its possession. Later, Snapkeys was asked to port its technology into a round smartwatch, which Snapkeys did based on Google's past representations.

14.     In or around the end of February of 2016, the representative of Snapkeys sent a Google "Hangouts" message to Clem Wright, the representative of Google, asking him for an update on the project's status, and the promises and representations made to Snapkeys in the months prior. The representative of Google assured Snapkeys that Google would fulfill its promises to Snapkeys during the month of February. Shortly thereafter, Google acted willfully, and in bad faith, to fraudulently erase these communications, and all communications and transcripts from the Google "Hangouts" between representatives of Snapkeys and Google, a chat in which Google's fraudulent assurances, representations, and promises to Snapkeys were made.

15.     In May of 2016, in response to another Snapkeys' request for an update regarding the timeline for receiving the promised agreement, software, and hardware, Google representatives informed Snapkeys that Google planned to publish a developer preview of the Android Wear project at Google I/O, at which time Snapkeys would be able to download the necessary software to begin testing its input method editor (IME) on an Android Wear smartwatch. When the representatives of Snapkeys ask what they could do in preparation for the Google I/O, they were reassured by Google representative Clem Wright that their product did not need any further development prior to the I/O, and specifically responded as follows:

> "Right now there won't be much benefit to you to getting an early build before I/O, which is in just two weeks on 5/18. First, you have already done most of the development :) Second, there will be a bit of churn as we continue to fix issues in the build."

COMPLAINT                                   6

16.     Not only did Google fail to deliver on these promises and representations, but these promises and representations in May of 2016 turned out to be fraudulent and misleading, as during this time Google was actually in cooperation with one of Plaintiff's competitors, a third-party Chinese tech company called TouchPal, to implement a third-party keyboard, a keyboard which was announced at Google I/O for the new Android Wear 2.0 smartwatch.

17.     Despite this, Google continued to fraudulently mislead Snapkeys regarding the future of its technology within the Android Wear product line, and encouraged Snapkeys to continue investing valuable resources into its iType keyboard technology, including the development of additional keyboard features with the promise and understanding that the Snapkeys keyboard would launch with Google's Android Wear Smartwatch product line, and be promoted within the Google Play store.

18.     In response, Snapkeys continued to invest its limited financial resources into the iType keyboard based on Google's false representations, assurances, and promises, and provided Google with a version of the product to be implemented in the Google Play Store.

19.     Despite this, in mid-August of 2016, Google instructed Snapkeys that it found issues with the product—a product which Google previously admitted to be "impressive" and "far ahead" of its competitor's products including Google itself—and, despite Google's prior representations, that Snapkeys's iType technology would not be promoted in the Google Play store or included in Google's collection of "Keyboards for Wear."  The alleged "issues" raised included:

- *Delay in load up time of the keyboard;*

   This issue was never raised in the past, and is part of the keyboard implementation process, a process that could not have been addressed for Android Wear 2.0 without the Early Access Program, a program that Google promised to provide to Snapkeys to address this type of issue, but never did.

- *Expected gesture space and backspace features; and*

COMPLAINT                                    7

This alleged "issue" and "expectation" was never raised by Google in the past, but nevertheless Snapkeys informed Google (to no avail) that this "issue" could be quickly addressed.

- *Buttons and icons on the keyboard were "quite small;"*

This alleged "issue" was also never raised by Google in the past, despite Google possessing the Snapkeys keyboard and prototypes for over a year prior, and as explained below, is completely contradictory based on Google's current smartwatch keyboard, which contains buttons and icons smaller than that of Snapkeys' keyboard.

20.     As a result of Google's announcement, Snapkeys lost nearly all of its product investors, and Snapkeys' primary staff left the company.

21.     To this day, Plaintiff is not aware of any collection of "Keyboards for Wear" ever being implemented on the Google Play Store, a collection that Google continually represented to Snapkeys following the 2016 Google I/O would not only exist, but would include Snapkeys' iType Keyboard and be promoted on the same.

22.     Nevertheless, despite all assurances by Snapkeys that these alleged "issues" would be quickly resolved, or had already been resolved, Google's representative Clem Wright rejected Snapkeys' keyboard, and despite representations to the contrary, stated that he did not have the authority to add Snapkeys' keyboard to this "Keyboards for Wear" collection, or to be promoted on the Google Play Store.

23.     On November 1, 2016, legal counsel for Snapkeys sent a cease and desist letter to Google stating that, effective immediately, Snapkeys terminates the Non-Disclosure Agreement that was entered into on July 29, 2015, and demands that Google cease and desist from using any and all Snapkeys' technology, confidential information and intellectual property, and to immediately send back to Snapkeys the two Android watch prototypes which were previously provided and retained by Google. Snapkeys also requested a hard copy of the entire conversation history between Google's representative Mr. Clem Wright and Snapkeys' representative Benjamin

COMPLAINT                                    8

Ghassabian from the "Google Hangouts" video conference and chats, which had been removed without Mr. Ghassabian's consent or approval.

24.     On November 3, 2016, Google acknowledged receipt of Snapkeys' cease and desist letter, and stated that it would respond as soon as possible. Google never responded to Snapkeys, and never returned the Android prototypes.

25.     On February 20, 2019, legal counsel for Snapkeys sent another letter to Google, putting Google on notice that it had not received a response to its November 1, 2016 cease and desist letter as was promised, Snapkeys' Android prototypes had not been returned, no hard copy of the Google Hangout transcript was provided, and no proof of destruction of the technology entrusted to Google by Snapkeys had been provided.

26.     On March 14, 2019, counsel for Google responded to Snapkeys' February 20, 2019 letter, wholly denying any fault on the part of Google, refusing to produce the Google Hangouts transcript, and stating that Google unlawfully destroyed Snapkeys's Android prototypes without their consent.

## COUNT I – BREACH OF NON-DISCLOSURE AGREEMENT

27.     Plaintiff repeats and realleges paragraphs 1 through 25 as if fully set forth herein.

28.     On June 29, 2015, the parties finalized a non-disclosure agreement preventing either party from "any unauthorized use or disclosure of confidential information."

29.     On information and belief, Google obtained confidential trade secrets and technology software from Plaintiff Snapkeys in relation to an on-going business relationship between the two entities to develop and promote Plaintiff's smartwatch keyboard technology within the Google Play Store and the Android Wear product line.

30.     This confidential information included Snapkeys' iType keyboard technology, which was acknowledged by Google as superior, and far ahead of any other third-party competitor

COMPLAINT                                    9

in the industry, including Google's own keyboard. Furthermore, and as explained more fully below, Snapkeys provided Google with confidential trade secrets regarding the specific considerations and interface implementations used in its iType technology, and how those implementations helped Snapkeys develop a product which Google admitted to be far ahead of the competition, and how Snapkeys designed their smartwatch keyboard technology to enable an optimized experience for smartwatch typing. This information was misappropriated by Google into its own Smartwatch keyboard technology, and published on Google's Android Wear website without authorization form Snapkeys or providing Snapkeys any credit or monetary benefit.

31.     Snapkeys further believes that Google provided this confidential information to third-party competitors of Snapkeys within the Android Wear developer community, including the Chinese competitor TouchPal, and further permitted the implementation of this technology on its Android Wear product line by these third-party competitors.

32.     On information and belief, in the course of providing this confidential information to third-party competitors, Google materially breached Paragraph 3 of the Non-Disclosure Agreement by divulging confidential information to third-party competitors of Plaintiff Snapkeys, and by permitting the use of this confidential information in the implementation of competitor keyboard technologies on Google's Android Wear 2.0 product line.

33.     Plaintiff Snapkeys has been and continues to be damaged as a result of Google's material breach of Paragraph 3 of the Non-Disclosure Agreement.

## COUNT II – MISAPPROPRIATION OF TRADE SECRETS

### (Defend Trade Secrets Act - 18 U.S.C. § 1832)

34.     Plaintiff repeats and realleges paragraphs 1 through 33 as if fully set forth herein.

COMPLAINT                                                    10

35.     On information and belief, Google obtained confidential trade secrets from Snapkeys through deceptive and fraudulent means in violation of Section 1832(a)(1) of the United States Code.

36.     On information and belief, Google acted without authorization from Snapkeys in delivering and/or distributing that confidential technology to third-party competitors of Snapkeys, in violation of Section 1832(a)(2) of the United States Code.

37.     The obvious nature of the misappropriation of Snapkeys's confidential technology into Google's Android Wear product line is illustrated in the photograph below, which shows Snapkeys' iType interface technology, and Google's misappropriated version of that interface technology into its current form.



38.     In addition, during the first Video conference between Google and Snapkeys, Snapkeys disclosed to Google, among other things, trade secrets and confidential information regarding specific interface and technological implementations used in its iType keyboard which allowed the Snapkeys smartwatch keyboard to be an optimized experience for smartwatch typing, and what made Snapkeys' keyboard so much more superior to any other keyboard in the industry. The information provided constituted confidential trade secrets and was as follows:

• Enabling the keyboard to occupy the full screen of the smartwatch interface;

- Adding a "replicator" for the words being typed to allow the user to determine what they are typing on the smaller screen of a smartwatch (Snapkeys termed this line as a "replicator" as it replicated the text which was being typed or selected); and

- Adding an "extract editor text" below the "replicator" which will contain alternative predicted words; and

- Adding a "remove keyboard" function, by using a key on the keyboard interface, that allows the user to remove the keyboard from the screen.

39.    Google subsequently applied these changes to its own product line without permission from Snapkeys, without crediting Snapkeys, and without providing Snapkeys any financial or monetary benefit for the same. Specifically, following the this confidential disclosure from Snapkeys to Google, Google incorporated these improvements on its own products and published on its developer website the following text in which Google simply changed the name of Snapkeys' "replicator" to "mirrored view," titled these improvements as "full-screen-mode IME," and outlined all the new benefits from this technology, the same benefits which Snapkeys disclosed to Google in prior confidential communications, and through the smartwatch prototypes delivered to Google:

## General IME considerations                                              ↑

Here are some things to consider when implementing IME for Wear:

- **Set default action**

   `RemoteInput` and Wear apps expect only single-line text entry. The ENTER key should always trigger a call to sendDefaultEditorAction, which causes the app to dismiss the keyboard and continue on to the next step or action.

- **Use full-screen-mode IME**

   Input methods on Wear consume most of the screen, leaving very little of the app visible; using full-screen mode ensures an optimal user experience regardless of the app UI. In full-screen mode, an ExtractEditText provides a mirrored view of the text field being edited and can be styled to blend with the rest of the input method UI. For more details on full-screen mode, see InputMethodService. 

40.    By incorporating Snapkeys's confidential technology and trade secrets into its product line through use of Third-Party Competitors, like TouchPal; by incorporating Snapkeys's

---

[2] http://developer.android.com/training/wearables/ui/wear-ime

COMPLAINT                                              12

confidential technology and trade secrets into Google's own smartwatch keyboard; and by publishing confidential information and trade secrets on its developer website for Snapkeys competitors to view and apply to their own products, Google acted in violation of Section 1832(a), and as a result Snapkeys continues to suffer financial damages.

## COUNT III - FRAUD

41.     Plaintiff repeats and realleges paragraphs 1 through 40 as if fully set forth herein.

42.     On information and belief, Google acted to intentionally and fraudulently deceive Snapkeys by misleading Snapkeys's representatives that Google would engage in an agreement and business relationship with Snapkeys, and to promote Snapkeys's technology in its Google Play Store, and Android Wear Smartwatch product line, when Google's true intent was to misappropriate Snapkeys's technology into its own keyboard technology, as well as the technology of Snapkeys's competitors who possessed an inferior product, thereby depriving Snapkeys of any monetary benefit or gain.

43.     On information and belief, Google communicated to Snapkeys that its iType technology was "far ahead of its competitors," and fraudulently misled Snapkeys with representations to induce further production of Snapkeys's iType Keyboard technology and prototypes, in order to allow Google to incorporate that technology into its own smartwatch keyboard, and that of Plaintiff's competitors. Specifically, Google made deliberate and fraudulent representations that it would:

- Provide Snapkeys an early access program agreement (EAP);

- Introduce Snapkeys to Google's original equipment manufacturers (OEMs) to further implement its technology into Google's product line;

- Provide Snapkeys with an application program interface (API) for the Android Wear 2.0, and a smartwatch with Android Wear 2.0 to further refine and implement its technology;

- Promote and push Snapkeys's product in the Google Play store and throughout the industry, fraudulently making representations to Snapkeys's Representatives that, "the world would know you;"

- Provide Snapkeys with the necessary means and support to implement its iType technology within the Android Wear prior to its release, so that iType would be ready for the release date of Android Wear 2.0;

- And promised to include Snapkeys keyboard on the Google Play Store in a "Keyboards for Wear" collection that it was going to release, a collection which, to Snapkeys's knowledge, was never actually released.

44.    When the questionable nature of these representations became apparent, Snapkeys followed up with Google, and Google repeatedly provided fraudulent assurances that these issues would be resolved, and were simply told to "stay tuned."

45.    On information and belief, while Snapkeys relied upon the fraudulent representations of Google to simply "stay tuned," Google was cooperating with a Chinese third-party competitor of Snapkeys to fraudulently incorporate Snapkeys's technology into Google's Android Wear 2.0 product line, without conferring credit or benefit to Snapkeys, and without Snapkeys's knowledge.

46.    Snapkeys had no prior knowledge that Google had been working with one of its competitors until the Google I/O in 2016, where Google announced that it was partnered with a third-party competitor of Snapkeys, a Chinese tech company called TouchPal.

47.    On information and belief, Google intentionally withheld this competitor partnership from Snapkeys in an attempt to fraudulently obtain Snapkeys's technology before announcing it had no intention to enter into an early access program agreement with Snapkeys as it had previously represented.

48.     Indeed, it wasn't until after the Google I/O in 2016 when this third-party competitor partnership was made known publicly, that Google began informing Snapkeys that it intended only to place Snapkeys's technology within a "collection" of "Keyboards for Wear", instead of the early access program agreement it had been promised.

49.     Shortly before, and following the Google I/O announcement, Google began to change what was previously represented and promised to Snapkeys, and started to raise new conditions and requirements for accepting and promoting Snapkeys's technology on the Google Play Store that were never mentioned prior. Nevertheless, representative of Snapkeys asked Google "what are your requirements so that we can work on them," but never received a response.

50.     In addition, on May 3, 2016, Snapkeys was promised by Google Representative Clem Wright, that following the 2016 Google I/O, Snapkeys would be able to "read documentation and download the necessary system images" to test their technology on the smartwatch. Assuring Snapkeys that this would allow them "plenty of time to optimize" their product before the public release in the Fall of 2016. Following the 2016 Google I/O, however, in August of 2016, Google's representative who had previously informed Snapkeys that "[t]he release will go public later in the fall so you'll have plenty of time to optimize," raised "issues" with Snapkeys' keyboard which were never brought up in the past, and summarily discarded Snapkeys' keyboard without giving Snapkeys an opportunity to address these alleged "issues."

51.     Furthermore, after the 2016 Google I/O, this third-party competitor, a Chinese keyboard manufacturer called TouchPal, put out a press release in which it stated that Touchpal "was invited by Google to use and provide feedback on Google's new Input Method Framework (IMF) of Android Wear 2.0 before its release," This early access TouchPal had from Google for Android Wear 2.0 was what Google previously represented and promised would be provided to Snapkeys, but was never delivered.

COMPLAINT                                    15

52.     As described previously in this complaint, on August 12, 2016, Google instructed Snapkeys that it found "issues" with the product—a product which Google previously found "impressive" and "far-ahead" of the competition—issues that would have been present since the product was provided to Google, yet were never raised as concerns until Google decided to reject the product. Specifically, these "issues" were particularly vague and overbroad, and were as follows:

- *"Typing accuracy was not as good as [Google] would have hoped."*

This alleged "issue" was never raised in the year and a half Snapkeys and Google had maintained their business relationship, and is actually contradicted by the praise the product received in the past from Clem Wright, Google's representative and primary contact for Snapkeys. Snapkeys keyboard is recognized as one of the most accurate keyboards in the market, and this accuracy was shown in the Snapkeys prototypes sent to Google, as well as through video demonstrations provided to Google.

(see https://www.youtube.com/watch?v=1h_g4C1ItQU).

- *"Took a long time for the keyboard to load up on the screen, after switching to it from the other keyboard."*

This alleged "issue" was never brought up by Google after receipt of the Snapkeys prototypes. Furthermore, one of these prototypes actually had the Snapkeys keyboard fully integrated on the Android Wear Smartwatch, yet this prototype was only met with praise from Google, and Google did not bring up any issue regarding its loading functionality despite numerous opportunities to do so. In fact, Google was supposed to send the Early Access Program and the other materials related to Android Wear 2.0 to address these exact types of issues in advance.

- *"Expected gesture typing to insert spaces between gesture-typed words."*

COMPLAINT                                              16

"Gesture-typing" was never discussed between the parties, nor did Google inform Snapkeys that this was an expectation until this alleged "issue" was raised in August of 2016. In fact, Google was fully aware that the Snapkeys keyboard was mainly "tapping-based," and had no perceived issue with this fact at any time prior. Nevertheless, Snapkeys' keyboard delivered to Google by default included a great gesture-typing technology, and implementing a space automatically between words is a simple task for anyone skilled in the art, a fact which Google was, or should have been, aware.

- *"Expected hitting delete key after gesture-typed word to delete whole key."*

As explained more fully below, Snapkeys explained to Google that this technology already existed on the versions of the Snapkeys keyboard, and in fact Snapkeys had been "the first company to invent this feature." In fact, this feature existed in the prototype delivered to Google through a leftward gesture on the alternative word list, and porting it to a tapping action on the backspace key is an easy task. In addition, "gesture-typing" was never discussed between the parties, nor did Google inform Snapkeys that this was an expectation until this alleged "issue" was raised in August of 2016.

- *"Overall visual business and size of icons (particularly on side buttons) was quite small."*

This alleged "issue" was particularly confusing for representatives of Snapkeys, as the issue had never been raised by Google in the past, and Snapkeys current keyboard was so accurate that larger buttons were not necessary. Furthermore, and as illustrated in the photograph below, Google's current keyboard contained icons and side buttons that were significantly smaller than the icons and buttons on the Snapkeys keyboard:

COMPLAINT                                    17

1
2
3
4
5
6
7
8



9   Nevertheless, Snapkeys promised Google it would increase the size of these buttons and icons to

10  address this alleged "issue."

11      • *"Typing accuracy was not as good as [Google] would have hoped."*

12      As explained more fully below, this alleged "issue" is a contradiction of all the past

13  representations made by Google regarding the product, and Snapkeys typing prediction technology

14  is considered "impressive" and "far advanced to any other technology available today."

15
16      53.     Representatives of Snapkeys responded on August 13, 2016 addressing each issue

17  raised by Google, promising to implement any changes that were appropriate, and seeking further

18  clarification on others, as many of the issues raised were not logically compatible with how the

19  technology was being used and implemented.

20      54.     Specifically, the issues raised with "typing accuracy" was perplexing, as the

21  Snapkeys tap-typing prediction technology was acknowledged by Mr. Clem Wright, as "far

22  advanced" to any other smartwatch keyboard technology in the industry, but nevertheless

23  Snapkeys asked for clarification and vowed to implement any changes Google deemed necessary

24  to address this concern.

25
26      55.     In addition, Google's alleged "issue" that the delete key did not "delete whole

27  word" was particularly concerning, as Snapkeys was actually the first company to develop this

28
COMPLAINT                                18

feature over twenty (20) years prior, a feature that did exactly what Google now claimed to be a deficiency in the product. Snapkeys explained this to Google, and instructed them that this feature could be quickly implemented within the backspace key as it already existed on the technology.

56.    Following Snapkeys' response to these alleged "issues," Google's representative Clem Wright, the representative who continually represented himself as the Google representative that could promote Snapkeys' iType keyboard in the Google Play Store, announced for the first time that he in fact had no power or authority to do so, a fraudulent representation which Snapkeys had relied on to its financial detriment.

57.    Furthermore, Google's representative who previously informed Snapkeys that "[t]he release will go public later in the fall so you'll have plenty of time to optimize," not only failed to address Snapkeys's responses to the alleged "issues" that were raised about the Snapkeys keyboard, but also did not give Snapkeys the time or opportunity to address these "issues."

58.    On information and belief, in or around the end of February of 2016, less than three months before the launch of Google's Android Wear 2.0 at the 2016 Google I/O, Google intentionally and willfully acted in bad faith to fraudulently erase all communications and transcripts from Google's "Hangout" between representatives of Snapkeys and Google, a chat in which Google's fraudulent assurances and representations to Snapkeys were made.

59.    In reliance on Google's fraudulent statements, assurances, and promises, Snapkeys and its investors expended significant financial resources to adhere to every request of Google, but when Google's promises and assurances were exposed as fraudulent, Snapkeys lost nearly all of its investors, the majority of its primary employees, and suffered financial damages.

## **COUNT IV – CONVERSION**

60.    Plaintiff repeats and realleges paragraphs 1 through 59 as if fully set forth herein.

COMPLAINT                                    19

61.     On October 6, 2015, upon mutual agreement by the parties, Snapkeys sent its first smartwatch prototype with its iType technology to Mr. Wright at Google's headquarters in California.

62.     The next day, on October 7, 2015, Mr. Wright contacted the representatives of Snapkeys stating that the Snapkeys keyboard was "very impressive," and asked that additional software be sent which implemented the technology on the Android Wear product line.

63.     On November 11, 2015, representatives of Snapkeys met with Google representative, Clem Wright, and at Google's request, and at significant expense to Snapkeys, Snapkeys ported its technology into the existing Android Wear 1.0, and provided Mr. Wright with an additional smartwatch prototype with its iType technology running on Android Wear 1.0, which Google retained in its possession.

64.     After becoming aware that Defendant's representations and promises were false, fraudulent and misleading, Snapkeys sent Google a cease and desist letter on November 1, 2016, demanding Google return to Snapkeys, all prototypes and property of Snapkeys which were provided to Google and retained in Google's possession.

65.     Following receipt of Snapkeys's demand letter, Google failed to return Snapkeys's confidential prototype technology, but instead, Google falsely stated that it would respond to Snapkeys's November 1, 2016 letter, yet no response was ever provided, and Snapkeys's technology was never returned.

66.     On March 14, 2019, Google admitted that Snapkeys's prototypes and technology had been intentionally and willfully destroyed by Google against the wishes of Snapkeys, resulting in the loss of those prototypes and the financial investment that was required to produce and refine them.

COMPLAINT                                    20

67.     Google's unauthorized destruction of the Snapkeys's prototypes resulted in substantial financial loss to Snapkeys. Specifically, the estimated expenses for development, research, implementation, and porting of the Snapkeys prototypes was roughly between $100,000 and $150,000.

## COUNT V – UNFAIR COMPETITION

### (Cal. Business & Prof. Code § 17200)

68.     Plaintiff repeats and realleges paragraphs 1 through 67 as if fully set forth herein.

69.     On information and belief, Google engaged in the practice of making false, misleading, and fraudulent representations and promises to Snapkeys that Google would engage in an agreement and business relationship with Snapkeys to promote Snapkeys's keyboard technology in its Google Play Store, and the Android Wear Smartwatch product line. In reality, Google's true intent was to implement Snapkeys's technology into its own keyboard, as well as publish trade secrets and confidential information regarding this technology to Snapkeys's competitors who possessed an inferior product, thereby depriving Snapkeys of any monetary benefit or gain.

70.     Google's practices and actions in this regard were unfair, unethical, fraudulent, and designed to induce Snapkeys to disclose the confidential information necessary for Google to produce its own keyboard to be comparable to Snapkeys's, without having to provide proper compensation and/or monetization to Snapkeys.

71.     Upon information and belief, Google used Snapkeys's prototypes and software for its own financial benefit, while making false and fraudulent representations and assurances to Snapkeys in order to ensure Snapkeys's continued cooperation and production of confidential material.

COMPLAINT                                    21

72.     Google's actions in this regard constituted unfair and fraudulent competition in violation of Section 17200 of the California Business and Professional Code.

## COUNT VI – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

73.     Plaintiff repeats and realleges paragraphs 1 through 72 as if fully set forth herein.

74.     On July 29, 2015, the parties entered into a contractual relationship after the parties properly executed a Developer Non-Disclosure Agreement (NDA).

75.     The parties entered into this contractual agreement for the purpose of ensuring all confidential information and trade secrets which were disclosed during the course of the parties' business relationship would remain confidential, and would not be disclosed to any third-party without the consent and approval of both parties.

76.     On information and belief, Google breached this non-disclosure agreement by unlawfully misappropriating the trade secrets and confidential information contained in Snapkeys's prototype smartwatches, and contained within various communications between representatives of Snapkeys and Google.

77.     Google effectuated this misappropriation by making false and misleading promises to Snapkeys including but not limited to the following:

- Google would promote Snapkeys and its iType technology as a Google partner through various advertising and social media outlets;

- Google would introduce Snapkeys to Original Equipment Manufacturers (OEMs) and ask that they preload the Snapkeys technology on Google devices;

- That Google would send Snapkeys an Early Access Program agreement (EAP) giving Google the right to share an early version of their software for Android Wear 2.0 devices with Snapkeys;

- That Google would send Snapkeys the Application Programming Interface (API) for Google's Android Wear 2.0, as well as an Android Wear 2.0 smartwatch to allow Snapkeys to integrate their technology within the new product;

COMPLAINT                                    22

- That Google would promote Snapkeys' iType keyboard in the Google Play store, and that Snapkeys would be able to monetize the technology by selling licenses to end users for a fee;

- That the Snapkeys keyboard would be included and promoted in a collection of "Keyboards for Wear" on the Google Play Store, yet to this day Snapkeys is not aware of any such collection actually existing on the Google Play Store;

- That Google would release an update for Android Wear 2.0 in the Fall of 2015, and before the release of the Android Wear 2.0 update, Google would provide Snapkeys with the Early Access Program, an Application Programming Interface for Android Wear 2.0, and a smartwatch with the necessary support to implement Snapkeys' iType technology so that iType would be ready for the release date of Android Wear 2.0.

78.    Google failed to keep any of these promises, representations, or assurances, and upon information and belief, never intended to do so, but only sought to induce Snapkeys to disclose its iType keyboard technology in order for Google to fraudulently misappropriate this technology within its own smartwatch keyboard.

79.    Upon information and belief, Google induced the disclosure of Snapkeys's trade secrets through bad faith and fraudulent means, and did so with the intent to misappropriate this confidential information, and provide this confidential information to third-party competitors.

80.    Defendant's actions in this regard constituted a breach in its implied covenant of good faith and fair dealing, and as a result Snapkeys suffered damages.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff Snapkeys respectfully requests this Court to enter judgement against Defendant Google granting the following relief:

- The entry of judgment in favor of Snapkeys against Google;

- A finding that Google violated the terms of the parties' Non-Disclosure Agreement;

- A finding that Google misappropriated the confidential trade secrets of Snapkeys which were provided to Google under fraudulent and false pretenses;

COMPLAINT                                        23

- A finding that Google induced the production of Snapkeys's confidential technology through false and fraudulent promises and pretenses;

- Damages adequate to compensate Snapkeys for Google's breach of the Non-Disclosure Agreement, violation of Section 1832 of the United States Code, and for the fraudulent promises and inducements made by Google to obtain Snapkeys's confidential information;

- Restitution and reliance damages for Snapkeys's financial loss and significant financial expenditures which Snapkeys accrued as a result of its compliance with Google's requests and Google's misappropriation of its technology, and which occurred as a result of Snapkeys's reliance on the false and fraudulent representations and promises of Google;

- Exemplary damages as allowed under 18 U.S.C. § 1836(b)(3)(C) for the willful and malicious misappropriation of Snapkeys's confidential trade secrets;

- Attorney's fees as allowed under 18 U.S.C. § 1836(b)(3)(C) for the willful and malicious misappropriation of Snapkeys's confidential trade secrets; and

- Such other and further relief that Snapkeys is entitled to under the law, and any other and further relief that this Court or a jury may deem just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Snapkeys hereby demands a jury trial on all issues so triable in this action.

DATED: May 16, 2019                    Respectfully submitted,

                                       SMITH CLINESMITH, LLP


                                       BY: */s/ Dawn M. Smith*
                                       Dawn M. Smith, Esq.

COMPLAINT                         24

1

2

325 N. St. Paul Street
Republic Tower, 29th Floor
Dallas, TX 75201
Telephone:  (214) 953-1900
Facsimile:  (214) 953-1901
dawn@smithclinesmith.com
**ATTORNEYS FOR PLAINTIFF**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                        25