UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SNAPKEYS, LTD, <br><br>  Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br>  Defendant. | Case No. 19-CV-02658-LHK <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> Re: Dkt. No. 35 |

Defendant Google LLC ("Google") brings a motion to dismiss Plaintiff Snapkeys, Ltd.'s ("Snapkeys") Second Amended Complaint. ECF No. 35 ("SAC"). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Google's motion.

## I. BACKGROUND

Snapkeys is a "software development company that specializes in creating smartphone and smartwatch keyboard technology." SAC ¶ 6. Snapkeys is a foreign limited liability company based in Israel. *Id.* ¶ 1. Google is a corporation organized under the laws of Delaware with its principal place of business in Mountain View, California. *Id.* ¶ 2.

Beginning in July 2015, the parties engaged in preliminary discussions to promote

Snapkeys' "brand new 'iType' technology on Google's Android Wear smartwatches." *Id.* ¶ 8. Soon thereafter, Google sent Snapkeys a Developer Non-Disclosure Agreement (the "NDA"), which was executed by the parties on July 29, 2015. "The purpose of the NDA, as stated within the document, was 'to facilitate technical discussions concerning existing or future product development efforts by the parties.'" *Id.* ¶ 10. However, the NDA "impose[d] no obligation to proceed with any business transaction." ECF No. 35-2 at 2.

Snapkeys alleges that, over the course of the following year and a half, Google made a number of fraudulent and misleading promises that it would work with Snapkeys and promote Snapkeys' iType keyboard technology. *Id.* ¶ 11. Snapkeys consequently provided Google with prototypes of the technology, including two smartwatches with the technology installed. *Id.* ¶¶ 13–17. Snapkeys claims that, despite these promises, Google ultimately declined to work with Snapkeys, and instead cooperated with a competitor of Snapkeys to develop a smartwatch keyboard that was substantially similar to Snapkeys' technology. *Id.* ¶ 24.

On May 16, 2019, Snapkeys filed a complaint that included, *inter alia*, a claim for misappropriation of trade secrets. ECF No. 1. Google claims that it then sent Snapkeys a letter that explained that Snapkeys had alredy publicized the alleged "secrets," including on YouTube, even before Snapkeys contacted Google. *See* ECF No. 35 at 5. Thereafter, Snapkeys filed a First Amended Complaint on July 9, 2019 that omitted the trade secrets claim. ECF No. 13. Google moved to dismiss the amended complaint on July 23, 2019. ECF No. 14. In lieu of opposing the motion to dismiss, Snapkeys filed a Second Amended Complaint on September 16, 2019. ECF No. 34.

On September 25, 2020, Google filed the instant motion to dismiss the Second Amended Complaint. ECF No. 35 ("Mot."). On October 25, 2019, Snapkeys filed an opposition. ECF No. 40 ("Opp'n").[1] On November 22, 2019, Google filed a reply. ECF No. 43 ("Reply").

---

[1] Snapkeys' brief contains thirty footnotes, which consume a third or even half of multiple pages. Moreover, Snapkeys' brief violates Civil Local Rule 3-4(c)(2), which prohibits footnotes "smaller than 12-point standard font." Snapkeys' brief may also violate Civil Local Rule 7-2(b), which limits briefs to 25 pages. The Court will strike future filings that violate the Civil Local Rules.

In support of its motion to dismiss, Google asks the Court to incorporate by reference the full NDA, which Google attaches as Exhibit A to the motion. *See* Mot. at 3 n.1. Google argues that Snapkeys apparently intended to attach the NDA to the Second Amended Complaint but inadvertently left the NDA out. *Id.* Snapkeys does not object. The Court agrees with Google that the document is incorporated by reference in the Second Amended Complaint because "the document forms the basis of the plaintiff's claim," i.e., for breach of the NDA. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).

## II.  LEGAL STANDARD

### A. Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in

3

the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

Snapkeys asserts five claims for relief against Google: (1) breach of non-disclosure agreement, (2) fraud, (3) conversion, (4) unfair competition, and (5) breach of the implied covenant of good faith and fair dealing. *See* SAC ¶¶ 35–89.

Google moves to dismiss all five claims. First, Google argues that the California Uniform Trade Secrets Act ("CUTSA") supersedes[2] Snapkeys' tort claims (claims two through five). Mot.

---

[2] The parties use the term "preempted." As explained in *Silvaco Data Systems v. Intel Corp.*, "[t]he [California] Supreme Court has criticized the use of 'preempt' to describe the supersession of one state law by another." 184 Cal. App. 4th 210, 232 n. 14 (2010) (internal quotations and citations omitted), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011). The *Silvaco* Court went on to state that "[f]or present purposes we favor [the term] 'supersede[.]'" *Id.* Where applicable, the Court follows *Silvaco* and uses the term 'supersede.'

4
Case No. 19-CV-02658-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

at 11–16. Second, notwithstanding any supersession, Google argues that Snapkeys fails to state a claim as to each of Snapkeys five claims. Mot. at 7–10, 16–21. The Court addresses each claim in turn.

**A. Claim One: Breach of Non-Disclosure Agreement**

In Snapkeys' first claim, Snapkeys alleges that Google breached paragraphs 3 and 8 of the parties' July 2015 Developer Non-Disclosure Agreement (the "NDA"). SAC ¶¶ 35–44.

Specifically, Paragraph 3 of the NDA requires Google to use "Confidential Information only for the Purpose" of "facilitating technical discussions concerning existing or future product development efforts." Mot., Ex. A ("NDA") at ¶ 3. Paragraph 3 also requires the parties to "prevent any unauthorized use or disclosure of Confidential Information." *Id.* Paragraph 8 specifies that "[n]o party acquires any intellectual property rights under this agreement except the limited rights necessary to use the Confidential Information for the Purpose." *Id.* ¶ 8. The NDA defines "Confidential Information" as "information . . . that the Discloser considers confidential" but includes certain limited exceptions. *Id.* ¶¶ 2, 4.

Google argues that the Court should dismiss this claim because Snapkeys' allegations are conclusory and fail to contain "fact allegations as to what Google supposedly did to misuse Snapkeys' unspecified 'confidential information.'" Mot. at 7–10. The Court disagrees.

Snapkeys' claim is a breach of contract claim, which requires: "(1) the existence of a contract, (2) performance or excuse for nonperformance, (3) defendant's breach, and (4) damages." *AlterG, Inc. v. Boost Treadmills, LLC*, 388 F. Supp. 3d 1133, 1147 (N.D. Cal. 2019) (citing *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)). The parties dispute whether Snapkeys has sufficiently pleaded the third element: defendant's breach. In the SAC, Snapkeys alleges that Google breached these paragraphs through Google's unauthorized use of Snapkeys' confidential "coding, software, and/or other technological data." SAC ¶ 40. Snapkeys' allegations are based on information and belief following the release of Google's and third-parties' keyboard technology that resembles Snapkeys' own software. *Id.* ¶¶ 39–43.

As an initial matter, Google provides no case law to support its argument that breach of an

5

NDA through improper disclosure is an "analogous claim" to "statutory trade secret misappropriation." Mot. at 8. Without further explanation, Google recites a string of caselaw, almost all of which considers whether a plaintiff has sufficiently pleaded a *trade secret* by "separat[ing] it from matters of general knowledge in the trade of special persons." *Id.* (quoting *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 U.S. Dist. LEXIS 48637, at *9 (N.D. Cal. Mar. 23, 2018)). Google's argument that Snapkeys should be held to the standard of pleading a trade secret is illogical because the NDA simply requires "unauthorized use or disclosure" of "information . . . the Discloser considers confidential." *Id.* ¶¶ 2, 3.

The only case cited by Google in which a court even analyzed the element at issue here—defendant's breach—is *Space Data Corp. v. X*, Case No. 16-cv-03260-BLF, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017), a case from another court in this district. In that case, the court dismissed a claim for breach of a non-disclosure agreement where the court found that plaintiff's allegations of the defendant's breaching conduct was overly conclusory. *Id.* at *1–2. Specifically, the plaintiff had merely alleged that "Defendants have engaged in other business activity based on Space Data's confidential trade secret information, which conflict with their legal obligations to Space Data." *Id.* at *2. The court held that the plaintiff failed to state a claim for breach of the NDA because "it does not offer any factual allegations about information [the defendant used], how [the defendant] used that information, or how that purported use violated the NDA's confidentiality provisions." *Id.*

Here, Snapkeys alleges far more specific facts than the plaintiff did in *Space Data Corp.* Snapkeys describes the "confidential information" as "two Snapkeys' prototypes with its iType keyboard technology fully integrated," as well as "information regarding the specific considerations and interface implementations used in its iType technology." *See* Opp'n at 10 n.16 (quoting SAC ¶ 13). Snapkeys describes Google's conduct: Google "appropriated [the confidential information] into its own Smartwatch keyboard technology" and "provided this information to third-party competitors." *See id.* at 10 n.17 (quoting SAC ¶¶ 39, 42). These allegations, if proven, plausibly violate the terms of the parties' NDA, which prohibited "any

unauthorized use or disclosure of Confidential Information." NDA at ¶ 3. The Court finds that these allegations are adequate to plausibly plead Google's breach of the NDA. As a result, the Court DENIES Google's motion to dismiss this claim.

### A. Claim Two: Fraud

In Snapkeys' second claim, Snapkeys alleges that Google made a number of misrepresentations to Snapkeys, which constituted fraud. SAC ¶¶ 45–63. Google argues that dismissal of Snapkeys' fraud claim is appropriate on two grounds. First, Google argues that Snapkeys' fraud claim is superseded by CUTSA. Mot. at 12–13. Second, relying on the terms of the NDA, Google argues that Snapkeys fails to plausibly plead justifiable reliance, which is an element of fraud. *Id.* at 16–18. Because the Court agrees with Google's first argument that Snapkeys' fraud claim is superseded by CUTSA, the Court need not consider Google's second argument.

The Court first sets for the standard for CUTSA supersession and then considers whether Snapkeys' fraud claim is superseded.

#### 1. CUTSA Supersession Standard

"Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret. It therefore supersedes claims—including Section 17200 claims—*based on the same nucleus of facts as trade secret misappropriation.*" *Waymo LLC v. Uber Tech., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017) (citations omitted) (emphasis added); Cal. Civ. Code. § 3426.7. However, supersession does not affect "contractual remedies" and "civil remedies" "that are not based upon misappropriation of a trade secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 233 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). "At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Waymo LLC*, 256 F. Supp. 3d at 1062. Put another way, "[t]o survive preemption, [a plaintiff's] claims must 'allege wrongdoing that is materially

distinct from the wrongdoing alleged in a CUTSA claim.'" *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1006 (N.D. Cal. 2018) (quoting *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *9 (N.D. Cal. Dec. 11, 2012)).

As this Court has recognized, suppression based on CUTSA is not strictly limited to "information [that] ultimately satisfie[s] the definition of trade secret." *SunPower*, 2012 WL 6160472, at *7. Instead, "[i]f the basis of the alleged property right is in essence that the information is 'not . . . generally known to the public,' . . . then the claim is sufficiently close to a trade secret claim" to trigger the "preclusive effect of CUTSA." *Id.* at *5; *see also Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 985 (C.D. Cal. 2010) ("[C]UTSA supersedes common law claims based upon the misappropriation of information that does not meet the statutory definition of a trade secret.").

### 2. Application to Snapkeys' Fraud Claim

The Court finds that Snapkeys' fraud claim is superseded by the CUTSA. Specifically, as set forth above, "[t]o survive preemption, [a claim] must 'allege wrongdoing that is materially distinct from the wrongdoing alleged in a CUTSA claim.'" *Prostar*, 360 F. Supp. 3d at 1006 (quoting *SunPower*, 2012 WL 6160472, at *9). The CUTSA explicitly defines trade secret misappropriation to include the use of "misrepresentation . . . to acquire knowledge of the trade secret." Cal. Civ. Code § 3426.1(a), (b)(2)(A). Consequently, courts within this district have found fraud claims superseded by CUTSA where a defendant is alleged to have made misrepresentations to induce the plaintiff to offer not just confidential information, but even "labor and insight" that led to confidential information. *See, e.g.*, *Prostar*, 360 F. Supp. 3d at 1007 (dismissing claims of deceit and negligent misrepresentation as superseded); *Peralta v. Cal. Franchise Tax Bd.*, 124 F. Supp. 3d 993, 1002 (N.D. Cal. 2015) (same as to claims of constructive fraud and fraudulent concealment).

Snapkeys' fraud claim requires: "(1) misrepresentation . . . ; (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Prostar*, 360 F. Supp. 3d at 1017 (quoting *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226,

8

1239 (1995) (internal quotation marks omitted)). Here, Snapkeys alleges that Google misrepresented that Google "would engage in an agreement and business relationship" with Snapkeys, even though "Google's true intent was to . . . misappropriate Plaintiff's technology into its own smartwatch keyboard, and/or provide that technology to Plaintiff's competitors." *Id.* ¶ 46.

Snapkeys argues that its fraud claim is not superseded because the claim does not directly depend on "the existence of any trade secret." *See* Opp'n at 13. For example, Snapkeys points to Google's alleged misrepresentations, such as Google's promise that Google "would provide Snapkeys an early access program agreement" and "would introduce Snapkeys to [Google's] original equipment manufacturers." *Id.* at 12 (quoting SAC ¶ 47). Providing no caselaw, Snapkeys argues that because Google's purported representations "were fraudulent with or without any confidential information actually being exchanged," the CUTSA does not apply. *Id.* However, contrary to Snapkeys' position, the subject of the misrepresentations are of no moment to the CUTSA supersession analysis, which instead asks whether, "stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Waymo LLC*, 256 F. Supp. 3d at 1062.

The Court finds that Snapkeys' remaining allegations cannot independently support a fraud claim. Specifically, Snapkeys' theory of fraud depends entirely on its allegations that Google had all along intended to mislead Snapkeys into divulging Snapkeys' confidential information for Google's own use. *See* SAC ¶¶ 46–48. These allegations are crucial for Snapkeys to establish Google's "intent to defraud," a necessary element for a fraud claim. *See Prostar*, 360 F. Supp. 3d at 1006. However, these allegations also constitute "facts supporting trade secret misappropriation." *See Waymo LLC*, 256 F. Supp. 3d at 1062. In fact, Snapkeys' fraud claim falls squarely into the statutory definition of trade secret misappropriation. *See* Cal. Civ. Code § 3426.1(a), (b)(2)(A) (defining misappropriation to include the use of "misrepresentation . . . to acquire knowledge of the trade secret."). Far from being "materially distinct" from a claim covered by the CUTSA, Snapkeys' fraud claim is coterminous with conduct covered by the CUTSA.

As a result, the Court agrees with Google that Snapkeys' fraud claim is superseded by the CUTSA. Moreover, the Court finds that amendment of this claim would be futile in light of the supersession, the Court DENIES Snapkeys' leave to amend this claim. *See Leadsinger*, 512 F.3d at 532.

### B. Claim Three: Conversion

In Snapkeys' third claim, Snapkeys alleges that it incorporated its keyboard technology into two smartwatches (the "prototypes"), which were given to Google but which Google never returned. SAC ¶¶ 64–71. Google argues that dismissal of Snapkeys' conversion claim is appropriate on two grounds. First, Google argues that Snapkeys' conversion claim is superseded by CUTSA. Mot. at 13–14. Second, Google argues that Snapkeys fails to plausibly plead that it had a right to possession of the prototypes. *Id.* at 20. The Court will consider whether Snapkeys has stated a claim for conversion before considering whether the conversion claim is superseded by the CUTSA.

First, the Court finds that Snapkeys has adequately pleaded the conversion claim. "Under California law, '[t]he elements of a conversion claim are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.'" *Mission Produce, Inc. v. Organic All., Inc.*, No. 15-CV-01951-LHK, 2016 WL 1161988, at *8 (N.D. Cal. Mar. 24, 2016) (quoting *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010)). Google argues that Snapkeys fails to allege the first element: that Snapkeys had a right to possession of the prototypes at the time of the alleged conversion. Mot. at 20. Specifically, Google argues that Snapkeys "does not allege that it conditioned delivery upon future return," and that the NDA did not require Google to return anything to Snapkeys. *Id.* However, Snapkeys clearly alleges that it allowed Google "possession with the permission of Snapkeys, but Snapkeys did not confer rights to the prototype unto Google." SAC ¶ 67. Based on this allegation, and "constru[ing] the pleadings in the light most favorable" to Snapkeys, *see Manzarek*, 519 F.3d at 1031, the Court finds that Snapkeys has adequately alleged that it either owned or had a right to possession of the prototypes

at the time that Google allegedly converted the property, *see Mission Produce*, 2016 WL 1161988, at *8.

Second, the Court holds that Snapkeys' conversion claim is not superseded by the CUTSA because Snapkeys plausibly alleged that the prototypes had value independent from any trade secret. Courts consider whether the conversion claim is based upon "tangible, non-trade secret property" or "intangible" trade secrets or information. *See UCAR Tech. (USA) Inc. v. Li*, Case No. 5:17-CV-01704-EJD, 2018 WL 2555429, at *4–5 (N.D. Cal. June 4, 2018). "A claim for conversion of tangible property such as documents, computer disks, or physical models survives preemption if the tangible property has value apart from the information the property embodies." *Id.* at *5.

"Snapkeys' conversion claim is predicated on the fact that Defendant was entrusted with Snapkeys' personal, tangible property," which Snapkeys alleges Google either destroyed or misused. Opp'n at 14. Google argues that Snapkeys' conversion claim is superseded because "Snapkeys does not contend that it is a smartwatch manufacturer [or] that the smartwatches in and of themselves created any value." Mot. at 14. Contrary to Google's argument, Snapkeys does allege that the smartwatch prototypes were valuable and had required a substantial financial investment to produce. *See* SAC ¶¶ 64–71. The Court agrees that Snapkeys' allegations, along with all reasonable inferences in Snapkeys' favor, are enough to distinguish the smartwatches at issue here from objects like computer disks, reports, or inventory lists, which Google cites as examples of tangible physical objects that have no substantial value independent from the information contained therein. *See* Mot. at 14 n.6; *Henry Schein, Inc. v. Cook*, Case No. 16-CV-03166-JST, 2017 U.S. Dist. LEXIS 29183, at *14 (N.D. Cal. March 1, 2017) (finding superseded conversion claim of "reports, inventory lists, [and] customer account lists"). Google's argument that the smartwatches could not have had independent value to Snapkeys because Snapkeys does not manufacture smartwatches is nonsensical, and Google cites no cases to support this assertion. Indeed, courts do not typically require a plaintiff to be in the business of manufacturing its converted property before finding that it has independent value. *See, e.g.*, *Loop AI Labs, Inc. v.*

11

*Gatti*, Case No. 15-CV-00798-HSG, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015) (finding, where plaintiff was not a computer manufacturer, that plaintiff could bring a claim for conversion of a computer because the computer had value independent of any information that it held). Because Snapkeys alleged "value apart from the information the property embodies," the Court finds that Snapkeys' conversion claim is not necessarily superseded by the CUTSA. *See UCAR Tech.*, 2018 WL 2555429, at *5.

However, the Court notes that the Second Amended Complaint at times conflates the value of the prototype smartwatches and the value of the underlying technology. *See, e.g.*, SAC ¶ 65 ("Snapkeys entrusted its first confidential smartwatch prototype with its iType technology to Mr. Wright at Google's headquarters in California."). As discussed above, Snapkeys' conversion claim survives only insofar as Snapkeys seeks recovery for the value of its tangible physical property, rather than the value of the trade secrets or any other confidential information embedded in those prototypes. As a result, the Court DENIES Google's motion to dismiss Snapkeys' conversion claim to the extent that it is premised on the value of the physical smartwatch prototypes.

**C. Claim Four: Unfair Competition**

In Snapkeys' fourth claim, Snapkeys alleges that Google violated California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 172000, through its fraudulent misrepresentations and promises to Snapkeys, which Google allegedly made for the purpose of gaining insight into Snapkeys' technology and delaying Snapkeys for competitive advantage. SAC ¶¶ 72–80.

"California's UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014) (citing Cal. Bus. & Prof. Code § 17200). Google asserts that this claim is superseded by CUTSA to the extent that it alleges claims under the "unlawful" prong. Mot. at 16–17. However, Snapkeys clarified that it is not asserting UCL claims under the "unlawful" prong. Opp'n at 23–25. As such, the Court need not consider Google's argument that this claim is superseded by

12

CUTSA.

Instead, Snapkeys alleges that Google is liable under the fraudulent and unfair prongs of the UCL. *See* Opp. at 23–25. Google responds that Snapkeys fails to state a claim as to each prong. Reply at 12–13. Google does not allege that Snapkeys' claim under the fraudulent and unfair prongs are superseded by CUTSA. The Court considers each prong in turn.

**1. Fraudulent Conduct**

"The California Supreme Court has held that a business practice is 'fraudulent' in violation of the UCL if "members of the public are likely [to be] deceived by the practice." *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 865 (N.D. Cal. 2014) (quoting *Committee on Children's Television v. Gen. Foods. Corp.*, 35 Cal.3d 197, 214 (1983), *superseded by statute on other grounds as stated in Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223 (2006)). Snapkeys' only allegation that Google deceived the public is that Google "created a misleading alert once a user enabled the Snapkeys iType keyboard on an Android Wear smartwatch." SAC ¶ 77. Specifically, the alert "told Smartwatch users attempting to enable the Snapkeys keyboard, that [Snapkeys] could use the keyboard to collect all text that the user types including the user's personal information, such as passwords and credit card information." *Id.* Snapkeys alleges that the alert "did not appear when a Smartwatch user attempted to use Google's default keyboard, a keyboard that was also capable of collecting the same consumer information." *Id.* ¶ 78.

Snapkeys does not identify what was "misleading" about this alert. In fact, Snapkeys' allegation that the Google default keyboard was "*also* capable of collecting the same user information" concedes that the alert was accurate with respect to Snapkeys' keyboard. *See id.* (emphasis added). As such, the Court construes Snapkeys' allegation to be a theory of fraudulent omission: specifically, that Google's omission of the alert for Google's default keyboard was misleading. "For an omission to be actionable under the UCL, 'the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, Case No. 16-MD-02752-LHK,

13
Case No. 19-CV-02658-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

2017 WL 3727318, at *29 (N.D. Cal. Aug. 30, 2017) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)). However, Snapkeys does not allege that the omission of the alert for Google's default keyboard was contrary to any affirmative representation, nor does Snapkeys allege that Google was "obliged" by some duty to make the same alert as to Google's default keyboard. *See* SAC ¶¶ 72–80.

Accordingly, because Snapkeys fails to state a claim under the "fraudulent" prong of the UCL, the Court GRANTS Google's motion to dismiss Snapkeys' UCL claim as to the "fraudulent" prong. The Court GRANTS Snapkeys leave to amend its "fraudulent" prong UCL claim only to the extent that Snapkeys can identify how Google's alert was misleading, and that any omission alleged to be fraudulent was "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *29.

### 2. Unfair Conduct

"In competitor cases, a business practice is 'unfair' only if it 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247, 254 (2010) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186 (1999)).

Here, Snapkeys alleges that Google made a series of misrepresentations and promises for three reasons: to "1) obtain confidential information from Snapkeys; 2) buy Defendant and its third-party partner time to catch up with Plaintiff's technology superiority; and 3) creating misleading alert messages when a consumer tried to enable the Snapkeys iType keyboard." Opp'n at 15–16. The first of these allegations—that Google made misrepresentations to obtain confidential information from Snapkeys—is superseded by the CUTSA because it alleges wrongdoing that is not "materially distinct" from a claim of trade secret misappropriation. *SunPower*, 2012 WL 6160472, at *9; *see supra* Section III.B.

As to Snapkeys' remaining allegations, the Court finds that Snapkeys failed to state a claim

14
Case No. 19-CV-02658-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

under the unfair prong of the UCL. The Ninth Circuit has affirmed dismissal of a UCL unfair prong claim based on conclusory allegations of competitive harm. *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136–37 (9th Cir. 2014). In *Levitt*, a number of businesses alleged that the defendant's conduct "harms competition by favoring businesses that . . . purchase advertising [from the defendant] to the detriment of competing business that decline to purchase advertising." *Id.* at 1136. The Ninth Circuit characterized this as a "general allegation" that failed to allege that such conduct amounts to a "violation of antitrust laws 'or otherwise significantly threatens or harms competition.'" *Id.* at 1137 (quoting *Cel-Tech*, 20 Cal. 4th at 187).

So too here. Snapkeys' claim is completely devoid of any allegation about how Google's conduct harmed competition, e.g., in the smartwatch keyboard market. *See* SAC ¶¶ 72–80. Instead, Snapkeys only alleges that Google's conduct harmed Snapkeys, while also explicitly stating that Google assisted Snapkeys' competitors, "who possessed an inferior product." *See id.* In *Levitt*, the Ninth Circuit held that the plaintiffs' generalized allegations of "harm to competition" were too conclusory and thus insufficient to plead a UCL unfair prong claim. *See* 765 F.3d at 1136–37. Snapkeys' allegations are even weaker than that in *Levitt* because Snapkeys fails to allege any harm to competition but merely focuses on harm to itself, which is insufficient to state a claim under the "unfair" prong of the UCL. *See Cel-Tech*, 20 Cal. 4th at 186. Indeed, Snapkeys suggests that Google bolstered rather than harmed competition because Snapkeys alleges that Google assisted Snapkeys' competitors to develop a better product to compete with Snapkeys. *See* SAC ¶¶ 72–80.

Because Snapkeys fails to state a claim under the "unfair" prong of the UCL, the Court GRANTS Google's motion to dismiss Snapkeys' UCL claim as to the "unfair" prong. The Court GRANTS Snapkeys leave to amend its "unfair" prong UCL claim only to the extent that Snapkeys can plead facts showing that Google's conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *See Cel-Tech*, 20 Cal. 4th at 186.

### D. Claim Five: Breach of Implied Covenant of Good Faith and Fair Dealing

In Snapkeys' fifth claim, Snapkeys alleges that Google breached an implied covenant of good faith and fair dealing stemming from the parties' NDA. SAC ¶¶ 81–89. Google argues that dismissal of Snapkeys' claim is appropriate on two grounds. First, Google argues that the claim is impermissibly duplicative of its breach of contract claim. Mot. at 16 n.7; Reply at 11. Second, Google argues that the claim contradicts explicit provisions in the NDA. Mot. at 19 n.8; Reply at 11. Because the Court agrees with Google's first argument, that Snapkeys' claim is duplicative of its breach of contract claim, the Court need not address Google's second argument.

Under California law, the elements of a cause of action for breach of the covenant of good faith and fair dealing are: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.,* 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010). "[A] plaintiff must allege more than a mere contractual breach; he or she must allege 'a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Id.* (quoting *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)). However, "[i]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co.*, 222 Cal. App. 3d at 1395.

Here, the Court agrees with Google that Snapkeys fails to state a claim because it is duplicative of Snapkeys' breach of contract claim. *See supra* Section III.A. Snapkeys alleges that Google "induced the disclosure of [Snapkeys'] confidential Smartwatch prototypes through bad

16

faith and fraudulent means, and did so with the intent to misappropriate this confidential information, and provide this confidential information to third-party competitors." *Id.* ¶ 88.  In fact, Snapkeys repeatedly alleges throughout this claim that Snapkeys was induced into allowing Google to misappropriate Snapkeys' technology.  *See, e.g.*, SAC ¶¶ 84, 85, 86, 88.  This is the exact allegation at the heart of Snapkeys' breach of contract claim.  *See* SAC ¶¶ 35–44; *supra* Section III.A.  Thus, Snapkeys' allegations as to breach of the implied covenant of good faith and fair dealing "do not go beyond the statement of a mere contract breach, [and] simply seek[s] the same damages or other relief already claimed in a companion contract cause of action." *See Careau & Co.*, 222 Cal. App. 3d at 1395.  Thus, this claim may be "disregarded as superfluous as no additional claim is actually stated." *Id.*

As a result, the Court GRANTS Google's motion to dismiss Snapkeys' claim of breach of the implied covenant of good faith and fair dealing.  Moreover, because the Court finds that amendment of this claim would be futile in light of Snapkeys' existing breach of contract claim, the Court DENIES Snapkeys' leave to amend this claim.  *See Leadsinger*, 512 F.3d at 532.

## IV.     CONCLUSION

For the foregoing reasons, the Court rules as follows:

- Google's motion to dismiss Snapkeys' first claim for breach of the NDA is DENIED;
- Google's motion to dismiss Snapkeys' second claim for fraud is GRANTED without leave to amend.  The Court thus dismisses this claim with prejudice;
- Google's motion to dismiss Snapkeys' third claim for conversion in DENIED;
- Google's motion to dismiss Snapkeys' fourth claim for unfair competition is GRANTED with leave to amend; and
- Google's motion to dismiss Snapkeys' fifth claim for breach of the implied covenant of good faith and fair dealing is GRANTED without leave to amend.  The Court thus dismisses this claim with prejudice.

Should Snapkeys choose to file an amended complaint to amend its UCL claim and delete the dismissed claims, Snapkeys must do so within 30 days of this Order.  Snapkeys is directed to

file a redlined complaint as an attachment to its amended complaint. Leave to amend is restricted to the defects discussed in this Order and in Google's motion to dismiss. Snapkeys may not add new parties or claims or amend other claims without obtaining prior express leave of the Court.

**IT IS SO ORDERED.**

Dated: March 4, 2020

_____
LUCY H. KOH
United States District Judge