1  DAVID H. KRAMER, State Bar No. 168452
   SARA TOLBERT, State Bar No. 300945
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  650 Page Mill Road
   Palo Alto, CA 94304-1050
4  Telephone:  (650) 493-9300
   Facsimile:  (650) 565-5100
5  Email:      dkramer@wsgr.com
               stolbert@wsgr.com
6
   CHARLES T. GRAVES, State Bar No. 197923
7  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
8  1 Market Plaza, Spear Tower, Suite 3300
   San Francisco, CA  94105-1126
9  Telephone:  (415) 947-2000
   Facsimile:  (415) 947-2099
10 Email:      tgraves@wsgr.com

11 Attorneys for Defendant
   GOOGLE LLC
12

13            UNITED STATES DISTRICT COURT

14           NORTHERN DISTRICT OF CALIFORNIA

15                  SAN JOSE DIVISION

16 SNAPKEYS, LTD.,                      )  CASE NO.:  5:19-cv- 2658-LHK
                                        )
17            Plaintiff,                )  **DEFENDANT GOOGLE LLC'S**
                                        )  **NOTICE OF MOTION AND**
18       v.                             )  **MOTION TO DISMISS THIRD**
                                        )  **AMENDED COMPLAINT**
19 GOOGLE LLC,                          )
                                        )  **DATE:     October 1, 2020**
20            Defendant.                )  **TIME:     1:30 p.m.**
                                        )  **DEPT:     Courtroom 2, 5th Floor**
21                                      )  **JUDGE:    Honorable Lucy H. Koh**
                                        )
22 _____ )  **COMPLAINT FILED:  May 16, 2019**

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

I.     INTRODUCTION .................................................................................... 1

II.    BACKGROUND ...................................................................................... 3

       A.     Snapkeys and Google Engage in Discussions Under an NDA ............................. 3

       B.     Snapkeys' Shifting Complaints ........................................................... 3

       C.     The March 4 Order and the Section 17200 Claims ................................... 4

III.   THE SECTION 17200 "UNFAIR" CLAIM SHOULD BE DISMISSED ........................ 5

       A.     Snapkeys Still Fails to State an "Unfair" Claim under Section 17200 ................... 5

              1.     Snapkeys Fails to Allege any Harm to Competition .................................. 5

              2.     Snapkeys' claim violates the *Colgate* doctrine ........................................... 8

              3.     Snapkeys Has Alleged No Injury Compensable by Competition Law ....... 9

IV.    SNAPKEYS' SECTION 17200 "FRAUDULENT" CLAIM FAILS ............................. 10

       A.     Snapkeys Did Not State a Claim for Affirmative Misrepresentation ................... 12

              1.     Snapkeys Does Not Plead An Affirmative Misrepresentation ................. 12

              2.     Snapkeys Lacks Standing to Allege Its "Fraudulent" Claim ................... 13

              3.     Snapkeys Failed to Plead a Permissible Section 17200 Remedy ............. 15

       B.     Snapkeys Does Not State a Claim Based on Fraudulent Omission ..................... 16

V.     CONCLUSION ..................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

## CASES

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*,
    190 F.3d 1051 (9th Cir. 1999) ....................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................7

*Atlantic Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990) ....................................................................................9

*Bardin v. DaimlerChrysler Corp.*,
    136 Cal. App. 4th 1255 (2006) ..................................................................17

*BladeRoom Group Ltd. v. Emerson Elec. Co.*,
    2018 WL 6242090 (N.D. Cal. Nov. 29, 2018) .......................................8, 10

*Brady v. Bayer Corp.*,
    26 Cal. App. 5th 1156 (2018) ....................................................................11

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U. S. 477 (1977) ...................................................................................9

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ....................................................................5, 6, 7, 9

*Chapman v. Skype Inc.*,
    220 Cal. App. 4th 217 (2013) ..............................................................11, 14

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2d Dist. 2001) .........................................................9

*Collins v. eMachines, Inc.*,
    202 Cal. App 4th 249 (2006)......................................................................17

*Daugherty v. American Honda Mtr. Co.*,
    144 Cal. App. 4th 824 (2006) ....................................................................16

*Epstein v. Washington Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) ......................................................................8

*Equinox Hotel Mgmt. v. Equinox Holdings, Inc.*,
    2018 U.S. Dist. LEXIS 16914 (N.D. Cal. Feb. 1, 2018) ..........................14

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) ......................................................11

*FTC v. Qualcomm Inc.*,
    411 F. Supp. 3d 658 (N.D. Cal. 2019) ........................................................9

*In re High-Tech Emp. Antitrust Litig.*,
    985 F. Supp. 2d 1167 (N.D. Cal. 2013) ....................................................10

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009)...............................................................................13

*In re Yahoo! Inc. Customer Data Security Breach Lit.*,
    2017 U.S. Dist. LEXIS 140212 (N.D. Cal. Aug. 30, 2017)...............................16

*Kane v. Chobani, Inc.*,
    2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19, 2013)..............................14

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)....................................................................13

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003)........................................................................15, 16

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011).........................................................................14, 15

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014)....................................................................7, 8

*Marsh v. Anesthesia Services Medical Group, Inc.*,
    200 Cal. App. 4th 480 (4th Dist. 2011)......................................................9, 10

*Mirkin v. Wasserman*,
    5 Cal. 4th 1082 (1993)..............................................................................14

*Newcal Indus. v. Ikon Office Solution*,
    513 F.3d 1038 (9th Cir. 2008)........................................................................6

*Nolte v. Cedars-Sinai Med. Center*,
    236 Cal. App. 4th 1401 (2015)...............................................................11, 18

*NYNEX Corp. v. Discon, Inc.*,
    525 U.S. 128 (1998)..............................................................................7, 10

*O'Connor v. Uber Tech., Inc.*,
    58 F. Supp. 3d 989 (N.D. Cal. 2014) ...........................................................14

*Ohio v. American Express Co.*,
    138 S. Ct. 2274 (2018) ...........................................................................6, 7

*Paladin Assocs., Inc. v. Mont. Power Co.*,
    328 F.3d 1145 (9th Cir. 2003)......................................................................10

*Philips Med. Capital, LLC v. Medical Insights Diagnostics*,
    471 F. Supp. 2d 1035 (N.D. Cal. 2007) ........................................................10

*Plotkin v. Sajahtera, Inc.*, 106 Cal. App. 4th 953 ...............................................11, 18

*Rebel Oil Co. v. v. Atlantic Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995).......................................................................7, 10

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020)...................................................................10, 11

*SPS Tech., LLC v. Briles Aerospace, Inc.*,
  2019 U.S. Dist. LEXIS 219610 (C.D. Cal. Oct. 30, 2019) ...............................................15

*Tanaka v. USC*,
  252 F.3d 1059 (9th Cir. 2001) ...........................................................................................7

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
  546 F.3d 991 (9th Cir. 2008) ......................................................................................15, 16

*United States v. Colgate & Co.*,
  250 U. S. 300 (1919) ...............................................................................................5, 8, 9

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ...........................................................................................13

*United States v. Sequel Contractors, Inc.*,
  402 F. Supp. 2d 1142 (C.D. Cal. 2005) ............................................................................16

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004) ...........................................................................................................8

*Victor v. R.C. Bigelow, Inc.*,
  2014 U.S. Dist. LEXIS 34550 (N.D. Cal. March 14, 2014) ........................................11, 18

*Walker Process Equip., Inc. v. Food Machinery & Chem. Corp.*,
  382 U.S. 172 (1965) ...........................................................................................................6

**STATUTES**

Cal. Bus. & Prof. Code § 17200 .......................................................................... *passim*

Cal. Bus. & Prof. Code § 17204 ..................................................................................13

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on October 1, 2020 at 1:30 p.m. in Courtroom 2, 5th Floor, United States District Courthouse, 280 South First Street, San Jose, California, before the Honorable Lucy H. Koh, and pursuant to Rule 12(b)(6), Defendant Google LLC will and hereby does move to dismiss Plaintiff Snapkeys, Ltd.'s Third Amended Complaint. This motion is based upon this Memorandum of Points and Authorities, the Proposed Order, and any other information and argument before the Court at the hearing.

## I. INTRODUCTION

This case now bears almost no resemblance to the one that Snapkeys filed against Google a year ago over Snapkeys' unsuccessful keyboard application for smartwatches. Already, Snapkeys has abandoned the "trade secret" theory it started with after Google demonstrated that the secrets Snapkeys claimed were no such thing. Then, on Google's Motion to Dismiss, this Court rejected Snapkeys' claim that Google promised to promote Snapkeys in order to engage in "misappropriation," recognizing it was simply a repackaging of Snapkeys' former trade secret claim. That left Snapkeys with only meager claims for breach of a non-disclosure agreement and conversion. Because those claims have little value or future, Snapkeys has tried again, offering up a Third Amended Complaint ("3AC") featuring contrived theories under California Business and Professions Code Section 17200. But again, Snapkeys' theories are not viable.

For the first time, Snapkeys seeks to pursue an antitrust-style claim under the "unfair" prong of Section 17200. The gist is that Google supposedly controls a "smartphone keyboard market," and squeezed out Snapkeys as part of a bigger scheme to block "large competitors" from "vying for excellent technology from start-ups to integrate into their own products[.]" But to state such a claim, a party must define an actual market, plead facts establishing the defendant's market power, and demonstrate injury to competition as a whole, not just to itself. Snapkeys' fact-free allegations do not come close to meeting these requirements. Beyond that, Snapkeys seems to believe that Google was somehow obligated to deal with Snapkeys. While the 3AC makes clear that Google actually did provide Snapkeys with free distribution of its app, the law plainly does not require Google to have done so. Finally, Snapkeys does not allege the proper

injury to proceed with this claim. For all of these reasons, its recently-hatched "unfair" claim should be dismissed without leave to amend.

Snapkeys' new claim under the "fraudulent" prong of 17200 also should go no further. According to Snapkeys, Google displayed a "fraudulent" notice to consumers downloading keyboard apps from Google's Play Store, alerting them that the apps "may be able to" collect keystroke data, including credit card numbers and passwords. Such an alert is not remotely fraudulent or deceptive. Indeed, it is not a statement of fact at all. It is merely a generic notice about the possibility that keyboard apps may collect keystroke data.

In addition, under the law as the district courts of this Circuit have interpreted it, Snapkeys does not have standing to pursue a 17200 claim in this context. Snapkeys does not plead facts showing that Snapkeys itself relied on some supposed deception in the innocuous language of the notice or that it was harmed as a result of that reliance. That too should be fatal, as should Snapkeys' demand for damages rather than any permissible Section 17200 remedy.

Finally, Snapkeys claims that Google engaged in fraudulent conduct in violation of Section 17200 by failing to place a similar notice on its own keyboard app, which is pre-loaded onto smartwatches running the Android Wear operating system. Again, the problems with Snapkeys' claim are myriad. First, Snapkeys does not allege (and could not allege in good faith) that Google's keyboard app actually collects keystroke data. Given that, a notice from Google about keystroke data collection on its own app would make no sense, and the absence of one certainly is not deceptive. Further, Snapkeys points to nothing showing that Google has some legal obligation to provide a notice under any circumstances. And – as Snapkeys admits – Google actually does disclose its privacy practices in its "terms and conditions," which all Android Wear users accept. Beyond all that, Snapkeys again fails to show that it has standing to pursue such a claim given that it was not itself misled, and it fails to seek any cognizable relief.

Snapkeys has had multiple opportunities to plead its case. Even with the guidance this Court provided Snapkeys in its last Order, Snapkeys has been unable to state additional claims. Its various iterations of a 17200 claim should be dismissed with prejudice.

## II.    BACKGROUND

### A.    Snapkeys and Google Engage in Discussions Under an NDA.

Google summarized Snapkeys' allegations in its prior motion to dismiss.  In general, Snapkeys created a QWERTY keyboard software app it believed was suitable for smartwatches including those running the Android Wear operating system that Google distributes.  In July 2015, to discuss the possibility that Snapkeys' app would offered to Android Wear users, Snapkeys and Google entered into a standard nondisclosure agreement.  *See* 3AC ¶¶ 9-10.

After a handful of interactions, Snapkeys delivered two copies of its keyboard app, loaded onto smartwatches, for Google's evaluation.  *See id.* ¶¶ 14, 17.  In August 2016, Google informed Snapkeys that Google had identified significant shortcomings in Snapkeys' app.  *See id.* ¶ 28.

### B.    Snapkeys' Shifting Complaints.

Snapkeys filed suit almost three years later, in May 2019.  Its primary claim was trade secret misappropriation.  Snapkeys contended that it owned trade secrets in four user-facing features of its app.  It claimed for example, that it owned a trade secret in the idea of having a large enough screen to type on.  Google sent Snapkeys a letter pointing out that to the extent any of the information at issue was ever a trade secret, Snapkeys had publicized all of it before first talking to Google.  Snapkeys withdrew its original pleading, dropped the trade secret cause of action, and filed an Amended Complaint.

In its amended pleading, Snapkeys alleged that Google breached the parties' NDA by "appropriating" some undefined "confidential information."[1]  It also claimed conversion based on Google's supposed obligation to return the physical watches on which Snapkeys had provided evaluation copies of its app.  Snapkeys tacked on claims for fraud, breach of the implied covenant and violation of Section 17200.

---

[1] Almost a year into the case, despite multiple requests in discovery, Google still has no clue what that supposedly confidential information is, how it differs from the supposed trade secrets Snapkeys originally claimed, or how Google is supposed to have misused it.

## C.    The March 4 Order and the Section 17200 Claims.

After another minor amendment, Google moved to dismiss the Second Amended Complaint in September 2019.  The Court issued its order (ECF No. 54) on March 4, 2020, granting and denying the motion in part.  The Court allowed Snapkeys to proceed with breach of nondisclosure agreement and conversion claims (with respect to the watches themselves, but not the software on them), and dismissed the fraud, implied covenant, and "unlawful" Section 17200 claims with prejudice.  *See* March 4 Order at 17.  The Court also dismissed Snapkeys' 17200 claims based on allegedly "unfair" and "fraudulent" conduct with leave to amend – albeit with conditions.  *See id*. at 14-15.

As to the "unfair" prong of Section 17200, the Court first noted that in competitor cases, "unfair" claims must plead acts that threaten competition, and are tantamount to an incipient violation of the antitrust laws.  *See id.* at 15.  It noted that Snapkeys "fails to allege any harm to competition but merely focuses on harm to itself, which is insufficient to state a claim under the 'unfair' prong[.]"  *See id*.  It made clear that Snapkeys' amendment would have to "plead facts showing that Google's conduct 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'"  *See id*. (citation omitted).

The Court separately explained that the standard for pleading a 17200 claim based on "fraudulent" conduct requires the pleading of facts showing that the defendant did something that was likely to deceive members of the public.  *See id.* at 13.  It noted that Snapkeys' allegation involved an alert in the Google Play store which informed users that a keyboard app "could" collect user data.  *See id*.  The Court ruled that Snapkeys did not identify what was misleading about Google's alert.  It then went on to "construe Snapkeys' allegation to be a theory of fraudulent omission:  specifically, that Google's omission of the alert for Google's default keyboard was misleading."  But it recognized that Snapkeys failed to state a claim because it did not "allege that the omission of the alert for Google's default keyboard was contrary to any affirmative representation, nor does Snapkeys allege that Google was 'obliged' by some duty to

make the same alert as to Google's default keyboard." *See id.* (citation omitted). The Court granted Snapkeys leave to amend its Section 17200 "fraud" claim "only to the extent that Snapkeys can identify how Google's alert was misleading, and that any omission alleged to be fraudulent was 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *See id.* at 14 (citation omitted).

## III. THE SECTION 17200 "UNFAIR" CLAIM SHOULD BE DISMISSED

### A. Snapkeys Still Fails to State an "Unfair" Claim under Section 17200.

In its 3AC, Snapkeys again purports to assert a claim under the "unfair" prong of Section 17200, but even with the Court's guidance about what would be required to state such a claim, its new allegations are plainly deficient.

The Court allowed Snapkeys to amend only under strictly limited circumstances: "*only to the extent* that Snapkeys can plead facts showing that Google's conduct 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *See* March 4 Order at 15 (emphasis added) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186 (1999)).

Snapkeys has not come close to meeting the standard the Court laid out. Its 3AC fails to state an "unfair" claim for three independent reasons. First, the 3AC pleads no facts suggesting "an incipient violation of an antitrust law, or [a] violat[ion of] the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law." Second, Google has a right to choose the parties with which it will deal under the "*Colgate* doctrine" and exercising that right does not violate Section 17200 as a matter of law. And third, the 3AC is based entirely on purported harm to Snapkeys, not to competition in any market as a whole, and it has therefore not incurred compensable injury. We discuss each of these points in turn.

#### 1. Snapkeys Fails to Allege any Harm to Competition.

Snapkeys' failure to allege anything resembling an incipient antitrust violation warrants dismissal of the "unfair" claim. As this Court made clear, and as the California Supreme Court has held, Snapkeys must "plead facts showing that Google's conduct 'threatens an incipient

violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *See* March 4 Order at 15 (quoting *Cel-Tech.*, 20 Cal. 4th at 186).

The 3AC alleges no such facts. Snapkeys' theory of an antitrust violation harming competition is set forth in a single rhetoric-laden but fact-free paragraph in the 3AC:

> Defendant Google's actions were intended and designed to induce Snapkeys into delaying and/or stop seeking partnerships with Google's competitors are indicative of Google's large-scale practice of preying on smaller start-up companies at the expense of start-ups and larger competitors. This harms competition on a number of levels in that these practices 1) allow Google to produce products without having to provide proper compensation and/or monetization to the start-up companies – such as happened here with Snapkeys, and alleged in the above-recited facts; 2) allow Google to stifle competition from serious, large competitors that are vying for excellent technology from start-ups to integrate into their own products – as occurred in this case where Snapkeys turned down and/or delayed business opportunities with companies such as Fossil in favor of Google's promises; and 3) harms competition from start-up companies who are seeking to market advanced and new technology for compensation to the business that will provide them with the best option – which is precisely what happened to Snapkeys here. Each of these three consequences are interrelated and harm competition.

3AC at ¶ 56. The allegations fail on the most fundamental levels.

First, Snapkeys fails to allege anything like harm to competition in a specific, defined market and thus fails to plead an incipient antitrust violation or any other significant harm to competition. Absent a claim for per se liability – not an issue here – competition claims can only be assessed within the context of a relevant product and geographic market. *See Ohio v. American Express Co.,* 138 S. Ct. 2274, 2285 (2018) ("Without a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition." (quoting *Walker Process Equip., Inc. v. Food Machinery & Chem. Corp.*, 382 U.S. 172, 177 (1965)). Although the 3AC refers to a "smartwatch keyboard market," 3AC ¶¶ 55, 58, it alleges no facts either to define what that is or to explain how this construct is a relevant market in the antitrust sense. There is no discussion of any substitutes in supply or demand or any of the criteria required to support a purported market definition. That flaw is fatal. As the Ninth Circuit has explained, the relevant "market must encompass the product at issue as well as all economic substitutes for the product." *See Newcal Indus, Inc.. v. Ikon Office Sols., Inc.*, 513 F.3d 1038, 1045 (9th Cir. 2008); *accord Tanaka v. USC*, 252 F.3d 1059 (9th Cir. 2001) (rule 12(b)(6) dismissal for conclusory

allegation of relevant market); *see also Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1436 (9th Cir. 1995) (relevant market must include substitutes in supply as well as demand).

Snapkeys' failure to allege that Google has market power within the relevant market is also fatal. *E.g., American Express*, 138 S. Ct. at 2284. Snapkeys declares that Google has "full control of the smartwatch keyboard market," 3AC ¶ 55, but alleges no facts in support. And yet a simple search for "smartwatch keyboard apps" discloses links to "18 Keyboard Apps For Faster Typing on Samsung Smartwatches," "5 Top Keyboard Apps for Apple Smartwatches," and numerous other entries. Snapkeys' conclusory contrary allegation has no support in any facts.

Second, the only purported harm even alleged is that Google "succeeded in effectively pushing Snapkeys out as a serious competitor for Google's own keyboard." 3AC ¶ 58. But the exclusion of a single competitor is not harm to competition in the market as a whole as the cases demand. *E.g., American Express*, 138 S. Ct. at 2287; *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) (plaintiff must show harm "not just to a single competitor, but to the competitive process"). Snapkeys alleges the exclusion of no one else, and asserts no facts suggesting any increase in price, reduction in output, decline in quality, or any other facet of competition in the market as a whole. *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136–37 (9th Cir. 2014) (assertion that Yelp "harms competition by favoring businesses that submit to Yelp's manipulative conduct and purchase advertising to the detriment of competing businesses that decline to purchase advertising . . . does not satisfy *Cel-Tech*'s requirement that the effect of Yelp's conduct amounts to a violation of antitrust laws or otherwise significantly threatens or harms competition.") (quotations and citations omitted).

Snapkeys asserts that Google deprives small startups of "proper compensation"; it argues that Google can produce products without paying fair compensation; and it says that Google deprives larger companies of access to startup technology. But apart from its assertions about itself, it does not cite a single fact, a single instance, where any such thing occurred. Such conclusory pronouncements simply do not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (conclusory allegations cannot defeat a motion to dismiss); *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (affirming Rule 12(b)(6) dismissal). Snapkeys refers

repeatedly to Google "practices" but the 3AC does not contain a single allegation that anyone but Snapkeys was affected. Snapkeys' allegations, which are at best conclusory (if not non-existent), cannot carry the day. *See* March 4 Order at 15 ("The Ninth Circuit has affirmed dismissal of a UCL unfair prong claim based on conclusory allegations of competitive harm. *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136–37 (9th Cir. 2014).").  As this Court has held, "[u]nder the UCL's unfair prong, and as equally applicable in antitrust, '[i]njury to a competitor is not equivalent to injury to competition . . . ." *BladeRoom Group Ltd. v. Emerson Elec. Co.*, 2018 WL 6242090, at *4 (N.D. Cal. Nov. 29, 2018).  That is all Snapkeys has alleged here. [2]

Snapkeys has failed to allege facts supporting the most essential elements of an "unfair" claim under Section 17200, and the claim should be dismissed accordingly.

### 2. Snapkeys' claim violates the *Colgate* doctrine.

The essence of Snapkeys' "unfair" claim is that Google refused to deal with Snapkeys, at least in the manner Snapkeys desired (as Snapkeys admits that Google allowed Snapkeys' app to be distributed for free on Google's online Play store).  But the law places a high value on the right of Americans to choose the parties with which they will deal.  As the Supreme Court made clear in *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004), "as a general matter, the Sherman Act 'does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.' *United States v. Colgate & Co.*, 250 U. S. 300, 307 (1919)."  This right freely to choose one's business partners is what is known as the "*Colgate* doctrine."  Snapkeys' insistence that Google is obligated to deal with it (and, more

---

[2] Confusingly, Snapkeys elsewhere alleges in the 3AC that in May 2016 "Google was actually in cooperation with one of Plaintiffs' competitors, a third-party Chinese tech company, to apparently implement a third-party keyboard, a keyboard which [the competitor] announced at [a Google conference] for the new Android Wear 2.0 smartwatch." *See id.* ¶ 25.  It also claims "[o]n information and belief" that Google "provided" Snapkeys' supposed confidential information "to third-party competitors of Plaintiff Snapkeys and/or permitted the implementation and/or inspection of this technology by third party competitors." *See id.* ¶ 43. Snapkeys does not try to reconcile these allegations with its claim that Google was supposedly harming competition, beyond claiming "on information and belief" that Google's support of Snapkeys' competitors was "pretended." *See id.* ¶ 57 ("It is not surprising that none of those keyboards were adopted or supported by Google later.").

specifically, for Google to promote Snapkeys in the manner it wishes) is plainly inconsistent with that doctrine.

As the Court of Appeal said in *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363 (2001), conduct permitted under *Colgate* does not violate Section 17200 as a matter of law: "We conclude that the complaint fails to state a cause of action for violation of the Cartwright Act because the alleged conduct is permissible under the *Colgate* doctrine . . . . We also conclude that conduct that is permissible under the *Colgate* doctrine is neither unlawful nor 'unfair' under the unfair competition law, so the complaint fails to state a cause of action for violation of the unfair competition law." *Id.* at 367.[3] This is an independent basis for dismissal of the "unfair" claim.

### 3. Snapkeys Has Alleged No Injury Compensable by Competition Law.

As discussed above, Snapkeys alleges only harm to itself, not to competition in the market as a whole. That is not just a failure to allege the elements of an incipient antitrust violation or any other conduct significantly harming competition, as *Cel-Tech* requires. At the most fundamental level, it also means that Snapkeys is not a proper plaintiff with a right to sue – it has not incurred the type of injury that would entitle an antitrust plaintiff to bring a claim. Neither the antitrust laws nor Section 17200 allow recovery for injury to a single competitor rather than market competition. *See Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 501-02 (2011) (rejecting "[t]he individualized relief [plaintiff] seeks" and affirming trial court ruling that "Plaintiff alleges only individualized harm which does not support a claim for violation of the UCL"); *see also Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334-45, 352 (1990) (articulating antitrust injury requirement for all federal antitrust claims, and reaffirming that antitrust protects "competition not competitors"); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U. S. 477, 489 (1977).

A plaintiff must assert some injury "attributable to an anticompetitive aspect of the practice under scrutiny," *Atl. Richfield*, 490 U.S. at 334, but Snapkeys has alleged no such injury

---

[3] There are of course exceptions to the *Colgate* doctrine, *e.g.*, *FTC v. Qualcomm Inc.*, 411 F. Supp. 3d 658 (N.D. Cal. 2019), but none is alleged here.

here. *See Philips Med. Capital, LLC v. Medical Insights Diagnostics Ctr., Inc.*, 471 F. Supp. 2d 1035, 1045 (N.D. Cal. 2007) (dismissing Section 17200 claim where "Counter-Claimants have not alleged any facts which would establish an antitrust injury or violation"); *Atl. Richfield*, 490 U.S. at 340; *see NYNEX Corp.*, 525 U.S. at 135; *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1192 (N.D. Cal. 2013); *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999); *BladeRoom*, 2018 WL 6242090, at *4.[4] Here, where the only harm alleged is to the plaintiff, not the market, competition law provides no remedy. *See Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003); *Rebel Oil*, 51 F.3d at 1433.

Nothing in the 3AC suggests that Snapkeys' alleged injuries are anything but personal to itself. Those alleged injuries do not reflect any harm to competition in a relevant market. Accordingly, Snapkeys has failed to allege actionable injury under 17200's "unfair" prong.

Snapkeys' failure to demonstrate a market, Google's market power, harm to competition in that market, and Google's obligation to deal with Snapkeys are all fatal to its "unfair" claim.

## IV.     SNAPKEYS' SECTION 17200 "FRAUDULENT" CLAIM FAILS

Snapkeys also fails to state a claim under the "fraudulent" prong of Section 17200 under an affirmative misrepresentation theory or a fraudulent omission theory. Under both theories, Snapkeys also lacks standing because it failed to plead its own actual reliance, and it did not seek any remedy that Section 17200 allows.

"To prevail on a claim under the fraudulent prong of the unfair competition law 'based on false advertising or promotional practices,' the plaintiff must "'show that "members of the public are likely to be deceived."'" *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1135 (2020) (citations omitted). On a motion to dismiss or demurrer, the question is whether the challenged statement, in the eyes of an ordinary consumer acting reasonably under the circumstances, fails as a matter of law to show that such a consumer would be misled. *See id.* at 1135, 1140; *see also Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (2013) (stating rule; "'Likely to deceive'

---

[4] *Philips* and *Marsh* indicate that the federal antitrust injury doctrine applies in Section 17200 claims. But even if that were not so, what is very clear is that injury to a single competitor is not a basis for a private plaintiff to sue for unfairness under the unfair competition statute.

implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.") (citation omitted).

In cases alleging affirmative misrepresentation, this test means looking at a company's statement, and the circumstances of how the plaintiff-consumer viewed or received it. In some cases, the claim proceeds because a reasonable consumer could be misled. *See Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1172 (2018) (defendant sold vitamin bottle with prominent "One a Day" label, with contrary statement "printed in nano type" on the back stating that, in fact, two a day was the dosage); *Chapman*, 220 Cal. App. 4th at 227-28 (advertising plan as "unlimited" with a footnote about a supposed "fair usage policy" stating that calls are not actually unlimited); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 813-14 (N.D. Cal. 2011) (Koh, J.) (class plaintiffs stated a Section 17200 "fraudulent" claim where they alleged that consumers were likely to be deceived by a Facebook practice whereby a user who "likes" something could appear involuntarily in a "Sponsored Story" advertisement, and also alleged that Facebook did not seek informed consent when it later changed its Terms of Use regarding that practice).

But in other cases, claims fail where the challenged statement cannot reasonably be read as false, or where the plaintiff had reasonable notice – not the best notice – beforehand. *See Nolte v. Cedars-Sinai Med. Ctr.*, 236 Cal. App. 4th 1401, 1409 (2015) (affirming demurrer where plaintiff signed form upon entering medical facility agreeing to pay for services hospital provided, but complained that he was not informed about a particular change; in addition, hospital placed schedule of fees online and posted it at locations in the building; "'there is no requirement [under the UCL] that reasonable notice has to be the best possible notice'") (quoting *Plotkin v. Sajahtera, Inc.*, 106 Cal. App. 4th 953, 966 (2003) (affirming summary judgment; claim failed where plaintiff complained of notification of valet parking charge, but had received "reasonable and advanced notice of the charge" on the parking stub)); *Victor v. R.C. Bigelow, Inc.*, 2014 U.S. Dist. LEXIS 34550, at *57-58 (N.D. Cal. March 14, 2014) (Koh, J.) (dismissing Section 172200 "fraudulent" claim over product label stating "delivers healthful antioxidants"; "[Plaintiff] does not explain how the statement is either false or misleading to a reasonable consumer.").

**A. Snapkeys Did Not State a Claim for Affirmative Misrepresentation.**

**1. Snapkeys Does Not Plead An Affirmative Misrepresentation.**

The Court directed Snapkeys to plead, if it could, "how Google's alert was misleading." *See* March 4 Order at 14. In its 3AC, Snapkeys returns to the allegation that Google displayed a "misleading alert" to consumers enabling the Snapkeys keyboard app or those of "other small companies." *See id*. ¶¶ 59, 63. As to Snapkeys' app, the notice reads as follows:



*See id*. ¶ 59. Snapkeys misstates that notice in its 3AC. It alleges, incorrectly, that the notice says that Snapkeys' app "*would collect*" keystroke data. It then alleges that Snapkeys' Terms and Conditions and its Privacy Policy indicate that Snapkeys did not "collect the text that a user types." *See id*. ¶¶ 59, 61. Therefore, according to Snapkeys, Google's anodyne alert was "was fraudulent because it was untrue." *See* 3AC ¶¶ 59, 62 ("a frightening and untrue alert").

But as the Court recognized in its last Order, Google's generic alert does not say that any keyboard app actually collects keystroke data, merely that it could. *See* March 4 Order at 13 ("Specifically, the alert 'told Smartwatch users attempting to enable the Snapkeys keyboard, that [Snapkeys] could use the keyboard to collect all text that the user types including the user's personal information, such as passwords and credit card information.'" (citing Second Amended Complaint); *see also* 3AC ¶ 59 (same).

That is, Google merely alerts a user to a *possibility* of keystroke data collection, thereby suggesting that consumers inform themselves about the collection practices of a third-party keyboard app. There is no statement of fact presented at all in Google's consumer-friendly alert, certainly no false or deceptive one. Google is merely raising a possibility that consumers should be aware of.

The value of Google's alert is made manifest by the facts here. Despite what Snapkeys alleges, its privacy policy does not clearly disclaim keystroke data collection. It states that the Snapkeys app does not collect passwords "entered into fields that may be identified by our Services as password fields," and does not collect credit card or banking information "unless submitted by the User for a specific reason."[5] Rather than precluding keystroke collection then, Snapkeys' policy suggests that Snapkeys, in fact, may collect keystroke information by highlighting certain cases in which it will not. Indeed, it is not even clear from Snapkeys' statement whether it might collect passwords or credit card information under the right circumstances. Such uncertainty highlights why Google's statement that keyboard apps may collect keystroke data is important for consumers, and by no means fraudulent or deceptive.

### 2. Snapkeys Lacks Standing to Allege Its "Fraudulent" Claim.

Snapkeys also fails to state a claim for an affirmative misrepresentation because it does not plead it relied on Google's alert.

Section 17200 claims have a standing requirement: the claim must be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Thus, a plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *In re Tobacco II Cases*, 46 Cal.4th 298, 306 (2009). "'Reliance' as used in the ordinary fraud context has always been understood to mean reliance on a statement for its truth and accuracy. It follows that a UCL fraud plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made." *Kwikset Corp. v. Superior Court*, 51

---

[5] Snapkeys' Privacy can be found here: <https://www.snapkeys.com/contact/privacy-policy/>. Because Snapkeys relies on this document, it has been incorporated by reference. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (stating general rule and approving of incorporation where a plaintiff's claim depends on the document).

Cal. 4th 310, 327 n.10 (2011); *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 228-29 (2013) (satisfying the reliance and injury requirements requires "pleading facts showing actual reliance, that is, that the plaintiff suffered economic injury as a result of his or her reliance on the truth and accuracy of the defendant's representations.") (citing *Kwikset*). A plaintiff therefore fails to state a claim under Section 17200's "fraudulent" prong where it does not allege reliance on the representation claimed to be untrue. *E.g.*, *Kane v. Chobani, Inc.*, 2013 U.S. Dist. LEXIS 134385, at *22-37 (N.D. Cal. Sept. 19, 2013) (Koh, J.) (claim dismissed with leave to amend where plaintiffs did not adequately plead their reliance on advertising statements).

Here, Snapkeys does not allege that it relied on any allegedly false alert in the Google Play store. It only alleges that because of the alert "[c]onsumers were more likely to use Google's keyboard." *See* 3AC ¶ 62.[6] That is not sufficient under 17200. As Judge Chen has explained, "courts have recognized that UCL fraud plaintiffs must allege their own reliance – not the reliance of others – to have standing under the UCL." *See O'Connor v. Uber Tech., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014) (Chen, J.). In *O'Connor*, Uber drivers complained under Section 17200's "fraudulent" prong that Uber hurt their ability to receive tips by making fraudulent statements to Uber riders. But as Judge Chen recognized, the California Supreme Court required that such plaintiffs plead actual reliance. And, regardless of whether Uber riders may have been misled, the drivers themselves had not relied on any supposedly fraudulent statement. Accordingly, the 17200 "fraudulent" claim was dismissed. *See id.* at 1002; *see also Equinox Hotel Mgmt. v. Equinox Holdings, Inc.*, 2018 U.S. Dist. LEXIS 16914, at *30 (N.D. Cal. Feb. 1, 2018) (Rogers, J.) (direct competitor failed to state "fraudulent" claim in absence of pleading actual reliance; noting that California fraud law has not allowed reliance to be established by alleging the reliance of third parties) (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1091-93 (1993) (rejecting argument that a fraud-on-the-market theory should be imported into common law fraud as a substitute for plaintiff's lack of actual reliance on the statements in

---

[6] Notably, the "reliance" that Snapkeys refers to elsewhere in its 3AC is a remnant of its former common-law fraud claim. *See* 3AC ¶ 22. Those allegations have nothing to do with Snapkeys' Section 17200 cause of action.

question)).[7] This case is no different. Snapkeys cannot use any supposed reliance of others to support a 17200 fraud claims.

### 3. Snapkeys Failed to Plead a Permissible Section 17200 Remedy.

Snapkeys' claim also fails because it did not plead a single remedy that Section 17200 allows. Where a business sues a competitor, remedies under Section 17200 are limited to injunctive relief and restitution of property in which the plaintiff actually had a vested ownership interest. Such remedies do not include "disgorgement" of profits earned by the defendant for allegedly unfair business activities – aka unjust enrichment – or other lost business-type money damages. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144-49, 1152 (2003) (explaining section 17200's remedy limitations). As *Korea Supply* explained, section 17200 does not allow non-restitutionary disgorgement, and restitution is limited to money or property in which the plaintiff had a previously-vested ownership interest. *See id.*; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011) ("A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other."); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) (affirming district court's ruling under *Korea Supply* on a Section 17200 "unfair" claim that the plaintiff did not establish a valid restitutionary interest in the defendant's profits).

Snapkeys seeks money damages under its causes of action for breach of the parties' nondisclosure agreement and for conversion. *See* 3AC, Prayer for Relief D-E (seeking "Damages adequate to compensate," and "Restitution and reliance damages for Plaintiff's financial loss and significant financial expenditures"). It claims that because of Google's allegedly wrongful conduct, Snapkeys "kept funneling its limited financial resources into the iType keyboard," but

---

[7] A self-described "minority" position does not require actual reliance – but, notably, fails to address the majority position's recognition that California fraud law has not permitted reliance to be established by third party reliance. *E.g.*, *SPS Tech., LLC v. Briles Aerospace, Inc.*, 2019 U.S. Dist. LEXIS 219610, at *20 (C.D. Cal. Oct. 30, 2019) ("the Court agrees with the minority view").

then "lost nearly all of its product investors, and Snapkeys' primary staff left the company." *See* 3AC ¶¶ 27, 29.

But Snapkeys does not plead any facts that could support the limited form of restitution that *Korea Supply* permits for Section 17200 claims. That is, Snapkeys nowhere pleads, in furtherance of its "unfair" or "fraudulent" claims regarding supposed antitrust violations and a supposedly untrue alert, that it lost money or property, and that Google acquired such money or property. As a case with similar allegations demonstrates, this fails to state a claim. *See United States v. Sequel Contractors, Inc.*, 402 F. Supp. 2d 1142, 1156 (C.D. Cal. 2005) (dismissing Section 17200 claim where plaintiff "fails to state a claim for restitution because [plaintiff] does not allege any facts that support a finding that [plaintiff] has an ownership interest in property or funds in [defendant's] possession. Instead, [plaintiff] alleges that [defendant] caused [plaintiff] to incur payroll expenses and suffer a decline in the value of its business.").

Snapkeys also does not seek injunctive relief. *See* 3AC, Prayer for Relief A-F (no request for injunctive relief). To succeed on a claim for injunctive relief under Section 17200, the plaintiff must ask for an injunction keyed to the prong of the statute on which the claim is based. *E.g.*, *Theme Promotions*, 546 F.3d at 1009-1010 (affirming denial of permanent injunction on Section 17200 "unfair" claim where, pursuant to federal antitrust standards, the record was "ambiguous" as to the market and antitrust injury, and where it was not clear that plaintiff's requested injunction would further competition). Here, Snapkeys does not even try.

**B.     Snapkeys Does Not State a Claim Based on Fraudulent Omission.**

Claims of fraudulent omission under Section 17200 can proceed only where a defendant has a duty to disclose the allegedly omitted fact,[8] or the omitted fact contradicts the defendant's affirmative statement. *See Daugherty v. American Honda Mtr. Co.*, 144 Cal. App. 4th 824, 835

---

[8] A duty to disclose a fact arises when (1) there is a fiduciary relationship; (2) the defendant has exclusive knowledge of a material fact to which the plaintiff lacks reasonable access; (3) the defendant actively conceals a material fact; or (4) the defendant makes a partial statement that is misleading because something else is not disclosed. *See In re Yahoo! Inc. Customer Data Security Breach Lit.*, No. 16-MD-02752-LHK, 2017 U.S. Dist. LEXIS 140212, at *115-119 (N.D. Cal. Aug. 30, 2017) (Koh, J.) (noting rule; denying motion to dismiss where website stated that it met federal security standards, but plaintiff alleged that website instead had "noncompliant and substandard" security) (citations omitted).

(2006) (affirming demurrer where plaintiff alleged that company failed to disclose that after its warranty expired, a product might malfunction); *Collins v. eMachines, Inc*., 202 Cal. App 4th 249, 258 (2006) (reversing in plaintiff's favor where defendant did not disclose that its microchip did not contain hardware necessary to accurately operate disks, contrary to the expectations of reasonable consumers); *Bardin v. DaimlerChrysler Corp*., 136 Cal. App. 4th 1255, 1275 (2006) (affirming demurrer; alleged omission that automaker did not disclose such things as that part would be made of cast iron rather than "tubular steel" was not actionable).

The Court emphasized those requirements in its prior Order, stressing that to state a claim in an amended complaint, Snapkeys would have to plead that "any omission alleged to be fraudulent was 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *See* March 4 Order at 14 (citation omitted).

Snapkeys attempts to plead the second option. It claims Google fraudulently omitted from its own keyboard app – one pre-loaded into the Android Wear smartwatch operating system – the same notice regarding potential keystroke collection that Google displayed for third party keyboard apps in the Play Store. Specifically, Snapkeys asserts that "Google had an obligation to alert the public to the fact that its own keyboard and handwriting input systems were collecting consumer data to the same degree that it was alerting consumers that Snapkeys' app was doing the same." *See* 3AC ¶ 61. But despite the Court's directive, Snapkeys does not plead facts demonstrating any reason why Google would have a legal duty to display such a notice. The Court's analysis can stop there. Snapkeys has not done what the Court directed it to.

But Snapkeys' problems run deeper. Nowhere does Snapkeys allege that Google's keyboard app actually collects keystroke data, making a notice to consumers about hypothetical collection inapposite, at best. To be sure, Snapkeys dances around the issue, alleging that Google collects "consumer data," "user data," and "the same user information." *See id.* ¶¶ 60-63. But those are inartful dodges. Snapkeys does not allege (and cannot allege consistent with Rule 11) that Google's keyboard app collects keystroke data. There cannot be a duty to provide an alert that it might do so.

If Snapkeys means to complain more generally that Google did not reasonably inform consumers about Google's actual data collection practices, this too fails.  Snapkeys admits that Google does, in fact, provide an "alert" in "generic terms and conditions[.]"  3AC ¶ 61.  It contends, however, that this "alert" is "hidden" because it was "accepted upon receipt of an Android Wear Device," and "gave consumers no explicit warning of Google's collection of user data."  *See id*.  But again, Snapkeys does not allege that anything Google said in these "terms and conditions" was untrue:  Google's Privacy Policy informs users about Google's collection of a range of ordinary types of consumer data.[9]  *See Victor*, 2014 U.S. Dist. LEXIS 34550, at *57-58 (plaintiff failed to explain how product label stating "delivers healthful antioxidants" was false or misleading).[10]

Snapkeys' problems with its fraudulent omission claim run deeper still.  As with its claim for affirmative misrepresentation, Snapkeys does not allege that Snapkeys itself actually relied on or was misled by the absence of some (unspecified) information from Google regarding potential keystroke collection in its app.  Likewise Snapkeys nowhere suggests that it would have acted differently had some unspecified information been provided. Snapkeys thus has failed to establish that it has standing to pursue a claim based on any alleged omission.  *See supra* at 14-15.

Finally, even if it could pursue a claim, Snapkeys does not seek cognizable relief.  As before, Snapkeys claims only money damages under Section 17200.  Such relief is not available. For this reason as well, Snapkeys' fraudulent omission theory fails to state a 17200 claim.

---

[9]  *See* <https://www.google.com/policies/privacy/archive> (contains prior versions).  The Court can review these policies under the incorporation by reference doctrine described above. Google's Privacy Policy states on the first page that it applies to Google "apps" as well as the "Android operating system."

[10]  If Snapkeys means to allege that Google "hid" its terms and conditions by placing an "alert" at the outset of a user's Android Wear experience – that is, when the user first sets up a watch to run Android Wear – that too fails.  Although Snapkeys' allegations are hardly clear, it implies that it is unreasonable for Google to tell users about its Privacy Policy up front, and instead should do so sometime later, if and when a user might decide to enable an app contained within Android Wear.  There is no basis for any such allegation.  To the contrary, placing Google's Privacy Policy up front, at the outset, is just like the reasonable notice in *Nolte*, where the Court of Appeal affirmed a demurrer when a hospital had the plaintiff sign a form upon entry stating that he would pay for its services.  *See* 236 Cal. App. 4th at 1409.  And it is just like *Plotkin*, where a parking garage provided advance notice of its valet parking fee on the plaintiff's parking stub.  *See* 106 Cal. App. 4th at 966.

V.    **CONCLUSION**

Google respectfully requests that the Court dismiss the two Section 17200 claims in Snapkeys' Third Amended Complaint without leave to amend.

Dated:  May 8, 2020

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ Charles T. Graves*
CHARLES T. GRAVES
tgraves@wsgr.com

Attorneys for Defendant
GOOGLE LLC